**The PEOPLE of the State of Colorado, Complainant,**

v.

**Gary L. LOSEKE, Attorney-Respondent.**

**No. 84SA354.**

Supreme Court of Colorado,
En Banc.

April 29, 1985.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

John B. Moorhead, Baker & Hostetler, Denver, for attorney-respondent.

ROVIRA, Justice.

On May 19, 1983, the respondent, Gary L. Loseke, was suspended from the practice of law in Colorado during the pendency of disciplinary proceedings against him due to his conviction of a serious crime as defined in C.R.C.P. 241.16(e). We now disbar the respondent and order that he pay the costs of the disciplinary proceedings.

I.

On November 3, 1983, a formal complaint was filed against the respondent with the Colorado Supreme Court Grievance Committee (Committee). It alleged that the respondent was admitted to the practice of law in Colorado in 1972 and was the senior trust officer of The Farmers State Bank of Fort Morgan (Bank) in March 1980. From the latter date until December 1981, respondent traded in puts and calls (options to sell or buy stock) for shares of common stock. In order to conduct the trading he forged bank guaranty letters addressed to Boettcher & Company to secure the puts and calls which he ordered. It also alleged that on April 5, 1983, respondent pled guilty to the felony of knowingly, and with intent to defraud, making, drawing, and issuing certain obligations of a Federal Deposit Insurance Corporation insured bank, in violation of 18 U.S.C. § 1005 (1982), in the United States District Court for the District of Colorado.

The complaint stated that the respondent's conduct violated C.R.C.P. 241.6(1) (any act which violates the Code of Professional Responsibility), C.R.C.P. 241.6(2) (any act which violates accepted rules or standards of legal ethics), C.R.C.P. 241.6(3) (any act which violates the highest standards of honesty, justice, or morality), C.R.C.P. 241.6(5) (any act which violates the criminal laws of the United States), and C.R.C.P. 241.16 (conviction of a serious crime).

The respondent's answer admitted the material allegations of the complaint and, by way of mitigation, asserted that at no time were bank customer or trust funds at

risk, and full restitution had been made to the Bank.

Prior to proceedings before the Hearing Board of the Grievance Committee, the respondent, through counsel, entered into a Stipulation of Facts with the Disciplinary Prosecutor. The stipulation stated in part that respondent established an account, known as Farb, No. 2, which was used for personal trading of put and call options; that respondent, although he used only his own funds for trading, executed, purportedly on behalf of the Bank, documents known as "Guaranty Letters" and delivered them without authorization to Boettcher & Company in connection with his trading activities in order to secure the puts and calls which he ordered. The stipulation also stated that when the Bank discovered respondent's activities a number of options were outstanding which the bank repurchased or covered by paying $325,879.78. After his plea of guilty, respondent was sentenced to three years in a federal prison, subsequently reduced to eighteen months.

The Hearing Board heard testimony from respondent about his trading activities and mitigating circumstances. After concluding that the respondent had violated C.R.C.P. 241.6(1), (2), (3), (5), and C.R.C.P. 241.16, DR 1–102(A)(4) (conduct involving dishonesty), DR 1–102(A)(6) (conduct that adversely reflects on his fitness to practice law), and DR 1–102(A)(1) (violate a disciplinary rule), the Hearing Board recommended that respondent be disbarred. Subsequently, the Hearing Panel approved the findings, conclusions, and recommendation.

Respondent does not basically disagree with the findings and conclusions of the Hearing Board, but does take exception to the recommendation of disbarment. He argues that suspension is the appropriate discipline because (1) he voluntarily made full restitution to the Bank; (2) he cooperated with the federal authorities; (3) his prison sentence was longer than normal, based on his status as an attorney; (4) he lacked any prior criminal record and had a history of community service; (5) he had psychological problems which, in part, precipitated his illegal activity, and which are now acknowledged and solved.

After carefully reviewing the record, we are convinced that the recommendation of disbarment is warranted. While the respondent's efforts to mitigate the effects of his acts are commendable, they do not override his responsibility to act in accordance with the highest standards of justice, ethics, and morality. In *People v. Salazar*, 185 Colo. 331, 524 P.2d 298 (1974), where an attorney used his position as a director of a bank to arrange financial transactions in a manner prohibited by law, the court ordered disbarment and said:

Attorneys who deal with the public or with money of the public, whether in their professional capacity or in their private capacity, must govern their action in accordance with the highest standards of morality. Violation by attorneys of laws intended for the protection of the public or misapplication by them of funds in violation of the law, whether or not a loss results in the last analysis, constitutes conduct involving moral turpitude.

We recognize, as respondent's counsel argues, that disbarment might "sound the death knell" of respondent's legal career. However, no lesser discipline is justified. The respondent's acts were not some momentary aberration but were deliberate, carefully planned, and extended over a period of a year and a half.

Accordingly, it is ordered that the respondent be disbarred and his name be stricken from the roll of lawyers authorized to practice before the Supreme Court. Costs of $188.48 are assessed against the respondent and must be paid within sixty days from the date of the announcement of this opinion to the Supreme Court Grievance Committee, 190 East 9th Avenue, Suite 440, Denver, Colorado 80203.