The PEOPLE of the State of Colorado, Complainant,

v.

Nolan L. BROWN, Attorney-Respondent.

No. 86SA151.

Supreme Court of Colorado, En Banc.

Oct. 14, 1986.

Linda Donnelly, Disciplinary Prosecutor, George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Roath & Brega, P.C., Charles F. Brega, Christopher C. Cross, Denver, for attorney-respondent.

ROVIRA, Justice.

On October 17, 1985, the respondent, Nolan L. Brown, was suspended from the practice of law during the pendency of disciplinary proceedings against him due to his conviction of serious crimes as defined in C.R.C.P. 241.16(e). We now disbar the respondent and order that he pay the costs of the disciplinary proceedings.

I.

In November 1985, a complaint was filed against the respondent with the Colorado Supreme Court Grievance Committee (Grievance Committee). It alleged that the respondent was admitted to the practice of law in Colorado in 1961 and that on October 9, 1985, he was convicted by a jury verdict of the offenses of second-degree forgery, a class four felony; abuse of public records, a class one misdemeanor; and computer crime, a class four felony.[1] It also alleged that the crimes for which respondent was convicted are serious crimes as defined in C.R.C.P. 241.16(e).

The complaint stated that the respondent's conduct violated C.R.C.P. 241.6(1) (any act which violates the Code of Professional Responsibility), C.R.C.P. 241.6(2) (any act which violates accepted rules or standards of legal ethics), C.R.C.P. 241.6(3) (any act which violates the highest standards of honesty, justice, or morality), C.R.C.P. 241.6(5) (any act which violates the criminal laws of Colorado), and C.R.C.P. 241.16 (conviction of a serious crime).

The respondent's answer admitted violation of C.R.C.P. 241.6(1) and (5) and C.R.C.P. 241.16, but denied that he violated C.R.C.P. 241.6(2) and (3). Prior to proceedings before the Hearing Board (Board) of the Grievance Committee, the respondent, through counsel, entered into a Stipulation of Facts and Testimony with the Disciplinary Prosecutor. The Board accepted the stipulation and incorporated it into its findings.

The Board made the following findings concerning the events which led to respondent's conviction:

5. At the time of the events leading to Respondent's conviction, Respondent was the elected District Attorney for the First Judicial District, which includes Jefferson County. Among the many persons then working in Respondent's office was a man named James Shaw, an employee from the Department of Motor Vehicles. Mr. Shaw was assigned to the District Attorney's Office to act as liaison officer between that office and the Department of Motor Vehicles. His primary function was to assemble driver history records and files and to discuss those records with a deputy district attorney before trial.

6. At some time or another, but presumably before the latter part of September 1983, Respondent or his secretary asked Mr. Shaw to obtain a copy of Respondent's driving record. After the record was obtained, Respondent and Mr. Shaw discussed its contents in late September 1983. In the criminal proceeding, Respondent testified that he told Mr. Shaw that one of the three speeding convictions shown on his record might be erroneous because he thought he had been given a deferred judgment on one traffic ticket. In the hearing before the Board, Respondent testified that he

---

1. The Judgment of Conviction: Sentence: and Order to Sheriff (Mittimus) attached to the complaint reflects that the respondent was, as to the two felonies, granted probation for a period of four years, required to perform two hundred hours of community service, ordered to pay $190 costs, and serve five days in a community

correction program. With reference to the misdemeanor conviction, the respondent was ordered to pay a fine of $2,000 plus a 37% surcharge of $740 for the Victims and Witnesses Assistance and Law Enforcement Fund. Section 24-4.2-103, 10 C.R.S. (1986 Supp.).

thought his record was erroneous because earlier he had personally called his counterpart, Robert Russel, who was at that time the elected District Attorney in El Paso County, to negotiate a disposition of one of those tickets. During the discussion with Mr. Shaw, Respondent also told him that he (Respondent) had too many points on his driving record and stated that he needed some of the points taken off because of an insurance problem.

7. Mr. Shaw went to a supervisor, William Smyth, and relayed Respondent's request. Mr. Smyth then instructed a subordinate to delete the two oldest tickets from Respondent's driving record. Mr. Shaw delivered the altered driving record to Respondent on October 19, 1983.

8. Respondent's counsel conceded at the outset of the hearing the fact of Respondent's conviction. In view, therefore, of C.R.C.P. 241.16(c), Respondent's counsel called three witnesses who testified favorably about the integrity of Respondent and his long history of worthwhile public service. No evidence to the contrary was offered. Thus, based on the testimony presented, the Board finds that, with the exception of the matters which are the subject of this proceeding, Respondent's record, especially since his admission to the bar in 1961, has been exemplary both as to his personal and professional life.

The Board concluded that respondent had engaged in conduct which established grounds for discipline under C.R.C.P. 241.-6(1), (2), (3), and (5). It also determined that respondent had violated the following disciplinary rules of the Code of Professional Responsibility: DR 1–102(A)(4) (engaging in conduct involving dishonesty); DR 1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law); and DR 1–102(A)(1) (violating a disciplinary rule). Recognizing that the respondent, a public official, had been convicted of three crimes and that discipline was warranted, the Board recommended that respondent be suspended from the practice of law for one year and one day. Subsequently, the Hearing Panel approved the findings, conclusions, and recommendation. Respondent did not file any exceptions pursuant to C.R.C.P. 241.20(b).

When the matter was submitted to this court, we entered an order requiring the respondent to show cause why he should not be disbarred. A response was filed in which respondent argued that the recommendation of the Hearing Board was appropriate because of his otherwise unblemished career, his reputation in the community, and his demonstrated competence and performance during his twenty-five years of law practice.

The Disciplinary Prosecutor also filed a response in which, after analyzing our prior disciplinary opinions and reviewing the ABA *Standards for Imposing Lawyer Sanctions,* she concluded that a three-year suspension would be appropriate discipline.

## II.

In arriving at its recommendation that the respondent should be suspended for one year and one day, the Board considered his claim that suspension should be for a lesser period because his conduct, resulting in conviction, was an isolated event, because he had been held up to public scrutiny and ridicule, and because of his otherwise good character. It also recognized that because the respondent was an elected district attorney his conduct damaged not only himself, but the public, the courts, and the legal profession.

As we have stated before, and reaffirm today, while we have always given the recommendation for discipline by the Grievance Committee great weight, we reserve the right to exercise our independent judgment in arriving at the proper level of discipline. *People v. Fitzke,* 716 P.2d 1065 (Colo.1986).

Here, the respondent violated the very laws which he had sworn to uphold. He abused the power and the office which the citizens of the First Judicial District entrusted to him, and misused his position to

obtain an advantage for himself to which he was not entitled. He is guilty of a breach of trust placed in him as a public official and prosecutor and violations of his oath of office.

While it is true that respondent has not been subject to prior discipline, that is only one factor that must be considered. Of more concern is our responsibility to protect the public interest by ensuring continued confidence of the people of this state in the function and role of the office of district attorney and the integrity of the legal profession and the judicial system.

Were we to accept the recommendation of the Hearing Board and Panel, we believe that it would reflect a benign acceptance of conduct that cannot and should not be tolerated. It is not too much to say that a lawyer who holds the position of district attorney, with the substantial powers of that office, assumes responsibilities beyond those of other lawyers and must be held to the highest standard of conduct. When those powers are abused and duties ignored, the discipline must be commensurate with the act.

Here, respondent's convictions arose out of his efforts to reduce the number of points on his driving record in order to obtain a more favorable insurance rate on his automobiles. He used the power and prestige of his position to attain his objective, and thus implicated the office of district attorney in his unlawful activity.

In the final analysis, the question is what discipline should be imposed on the respondent. Our task is difficult in light of the respondent's contributions as a lawyer, public official, and citizen. However, under the circumstances here, we are convinced that conviction of a district attorney of two felonies and a misdemeanor while in office warrants the most severe sanction

which we have the authority to impose. *See People v. Unruh,* 621 P.2d 948 (1980); and ABA, *Standards for Imposing Lawyer Sanctions,* Standard 5.21 (1986) ("Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another...."). *See also People v. Fitzke,* 716 P.2d 1065 (Colo.1986); *People v. Loseke,* 698 P.2d 809 (Colo.1985).

Accordingly, it is ordered that respondent be disbarred and his name be stricken from the roll of lawyers authorized to practice before the Supreme Court. Costs of $234.59 are assessed against the respondent and must be paid within sixty days from the date of the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 500 South, Denver, Colorado 80202. The respondent's readmission to the Bar of the State of Colorado is conditioned upon compliance with C.R.C.P. 241.22(a) and payment of costs.

DUBOFSKY, J., dissents.

DUBOFSKY, Justice, dissenting.

I respectfully dissent.

The hearing board and the hearing panel of the grievance committee recommended that the respondent, Nolan L. Brown, be suspended from the practice of law for one year and one day. However, when the recommendation was presented to this court, we issued a rule to show cause why the respondent should not be disbarred. In response to our order, the disciplinary prosecutor reviewed the cases in which this court has imposed disbarment and concluded that the appropriate discipline for the respondent would be a three-year suspension.[1] Nevertheless, the majority con-

---

1. Prior to the hearing before the hearing board, the disciplinary prosecutor offered to enter into a Conditional Admission of Misconduct with the respondent that would recommend a three-year suspension. At the hearing, in response to a question from the presiding officer of the hearing panel concerning the penalty to be imposed,

the disciplinary prosecutor asserted that disbarment in this case would be inappropriate:

> It is an isolated incident, obviously, that we have before us. It is one incident that we're looking at, even though it supports three different criminal convictions. It's not a pattern of misconduct and doesn't involve anything as

cludes that the conviction of a district attorney of two felonies and a misdemeanor while in office warrants disbarment, relying on *People v. Unruh*, 621 P.2d 948 (1980); *People v. Fitzke*, 716 P.2d 1065 (Colo.1986); *People v. Loseke*, 698 P.2d 809 (Colo.1985); and section 5.21 ABA, *Standards for Imposing Lawyer Sanctions.*

Given the circumstances that provided the basis for the respondent's convictions in this case, I do not believe that disbarment is an appropriate sanction.[2] The respondent did not commit three crimes separately; rather, a single discussion with the employee of the department of motor vehicles supported convictions under three different criminal statutes: second-degree forgery, a class 4 felony; abuse of public records, a class 1 misdemeanor, and computer crime, a class 4 felony.

The disciplinary prosecutor's survey of previous Colorado attorney discipline case law informs us that the disbarment cases fall into two categories: (1) convictions for embezzlement or theft, usually of client monies, *People v. Quick*, 716 P.2d 1082 (Colo.1986); *People v. Buckles*, 673 P.2d 1008 (Colo.1984); *People v. Swope*, 621 P.2d 321 (Colo.1981); *People v. Hilgers*, 200 Colo. 211, 612 P.2d 1134 (1980); *People v. McMichael*, 199 Colo. 433, 609 P.2d 633 (1980); *People v. Silvola*, 195 Colo. 74, 575 P.2d 413 (1978); *People v. Peters*, 151 Colo. 409, 378 P.2d 205 (1963); *People v. Buckles*, 140 Colo. 261, 343 P.2d 1046 (1959); *People v. More*, 125 Colo. 571, 245 P.2d 467 (1952); *People v. Bentall*, 97 Colo. 526, 51 P.2d 352 (1935); *People v. Kaufman*, 90 Colo. 8, 5 P.2d 1114 (1931); and (2) convictions for manufacturing, sale or distribution of drugs, *People v. Harfmann*, 638 P.2d 745 (1981); *People v. Unruh*, 621 P.2d 948 (relied upon by the majority here); *People v. McGonigle*, 198 Colo. 315, 600 P.2d 61 (Colo.1979); *People v. Wilson*, 176 Colo.

389, 490 P.2d 954 (1971). *People v. Fitzke*, 716 P.2d 1065, relied upon by the majority for the discipline imposed in this case, involved both thefts from clients and possession of illegal drugs. Fitzke, as temporary guardian and conservator for an elderly and incapacitated woman, embezzled $19,000 from her estate. Fitzke was convicted of theft in Nebraska and unlawful distribution and possession of a controlled substance in Denver. Fitzke was disbarred in . Nebraska, and his Denver law firm filed criminal charges against him for conversion of funds.

The disciplinary prosecutor found only two Colorado cases involving disbarment that fell outside the pattern described. In *People v. Loseke*, 698 P.2d 809, the third case relied upon by the majority, the respondent was disbarred after pleading guilty to the felony of knowingly, and with intent to defraud, making, drawing, and issuing certain obligations of a federal deposit insurance corporation insured bank, in violation of 18 U.S.C. § 1005 (1982). Loseke, the senior trust officer of a Fort Morgan bank, secured his trading in options to sell or buy common stock by forging bank guaranty letters over a period of a year and a half. He was sentenced to three years in federal prison, a term subsequently reduced to eighteen months. Loseke made restitution of $326,000 to the bank for its repurchase of the guaranty letters. In *People v. Salazar*, 185 Colo. 331, 524 P.2d 298 (1974), the respondent was disbarred after his conviction of two felonies for violation of federal banking regulations for which he was sentenced to imprisonment for three years. Salazar was a shareholder, director and attorney for a bank with which he arranged a $65,000 loan for other bank shareholders. The severity of the sanctions in *Loseke* and *Sala-*

---

serious as drugs or drug dealing or hiding fugitives. So I felt, in looking at it, that it certainly would not support disbarment.

2. Under C.R.C.P. 241.22(a) a lawyer who has been disbarred may seek readmission eight years after the effective date of the order of disbarment. To be readmitted, the lawyer must

demonstrate his fitness to practice law and his professional competence, must successfully complete the written examination for admission to the bar and demonstrate by clear and convincing evidence his rehabilitation and full compliance with all applicable disciplinary orders.

*zar* was related to misconduct in handling money belonging to the public.

There have been two prior cases in Colorado concerning misconduct by a prosecutor. In *People v. Unruh,* 621 P.2d 948, the respondent, a deputy district attorney in Telluride, Colorado, paid $5,000 to undercover narcotics agents to obtain a share of the profits from the importation of drugs from Mexico. Unruh purchased cocaine for one of the undercover agents, used cocaine in the presence of an agent, and agreed to hide a fugitive from justice. Although Unruh was charged with several criminal offenses, he pled guilty to being a disorderly person, a misdemeanor offense. This court's decision to disbar Unruh relied upon cases from other jurisdictions disbarring attorneys involved in the importation or distribution of narcotic drugs. In addition, we noted that Unruh's misconduct was aggravated because of his position as a deputy district attorney.

The other case involving misconduct by a prosecutor is *People v. Tucker,* 676 P.2d 680 (Colo.1983). Tucker, the district attorney for the Ninth Judicial District, sustained two felony convictions for embezzlement of public property. After both convictions were reversed on appeal, Tucker was convicted of second degree official misconduct, a petty offense, and failure to disclose a conflict of interest, a misdemeanor. A subsequent grievance complaint additionally charged Tucker with making a key witness for the prosecution unavailable to testify during his trial for embezzlement. Tucker had received a prior letter of admonition from the grievance committee for other misconduct during his tenure as district attorney. All of this resulted in a suspension from the practice of law for one year and one day. At the time this court entered the suspension order, Tucker had been subject to an interim suspension of almost five years.

The disciplinary prosecutor, in making a recommendation that the respondent in the case before us be suspended for no more than three years, compares the instant case to the *Tucker* and *Unruh* cases. The prosecutor argues that suspension is appropriate because the misconduct here related to the respondent's personal affairs and did not involve the mishandling of client funds, public funds, or drug trafficking. The prosecutor notes that the respondent's abuse of his official position to seek a change in his motor vehicle department driving record in an attempt to gain more favorable insurance rates for the family cars was less serious misconduct than that in *Tucker* and *Unruh.*

The hearing board, in making its recommendation of suspension of one year and one day, considered section 5.21, "Failure to Maintain the Public Trust," of the American Bar Association's *Standards for Imposing Lawyer Sanctions,* which provides, "Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses a position with the intent to obtain a significant benefit or advantage for himself or another...." The board determined that the respondent knowingly used his position to obtain a benefit for himself, but the board refused to recommend disbarment because the benefit sought was so insignificant. As the board noted, "On the one hand, that which was ultimately obtained monetarily suggests that respondent could not conceivably risk so much for so little. On the other hand, his conduct suggests the sort of arrogant attitude which often typifies one's possession of immense powers." The hearing board weighed the respondent's conviction of felony offenses committed while serving as an elected district attorney and the impact of such conduct on the public, our system of justice, and the legal profession against the respondent's prior unblemished record and punishment as a felon that resulted in the loss of his job and the loss of his personal and political reputation. Although the hearing board and the hearing panel recommended a suspension of one year and one day, I agree with the disciplinary prosecutor's recommendation of a suspension for three years, primarily because the respondent's misconduct involved the use of his office as district attorney to violate the law. The respondent has

been subject to an interim suspension since October 17, 1985. The interim suspension, added to a three year suspension, would result in a four year suspension, discipline that I think is more appropriate than disbarment in this case.