The PEOPLE of the State of
Colorado, Complainant,

v.

Mark Manson WOLFE,
Attorney–Respondent.

No. 87SA160.

Supreme Court of Colorado,
En Banc.

Jan. 11, 1988.

Rehearing Denied Feb. 1, 1988.

Linda Donnelly, Disciplinary Prosecutor, Susan L. Fralick, Deputy Disciplinary Prosecutor, Denver, for complainant.

A. Craig Fleishman, Pryor, Carney and Johnson, P.C., Denver, for attorney-respondent.

MULLARKEY, Justice.

This is an attorney discipline case in which a hearing panel of the Supreme Court Grievance Committee has recommended that the respondent, Mark Manson Wolfe, be suspended for a period of two years and be assessed the costs of the proceeding. We reject the committee's recommendation and order that he be disbarred.

I.

The parties entered into a stipulation of facts which shows that Wolfe was admitted to practice in the State of Colorado in 1977. This case arose from the respondent's representation of Katherine P. Ross, whose husband was a pedestrian killed in an auto-pedestrian accident in 1984. Ross retained Wolfe in late 1984 to probate her husband's estate and to help her recover the proceeds of two of his life insurance policies. Although the insurance company initially denied coverage, the respondent obtained payment on both policies after sending a

demand letter. The insurance company sent Wolfe two checks dated February 20, 1985. Each was in the amount of $12,-883.56 and each was made payable solely to Katherine P. Ross.

After he received both checks, Wolfe called Ross and told her that he had received only one check. He informed Ross that the insurance company had declined to pay on the second policy and suggested that she commence legal action to recover the policy proceeds. Wolfe discussed with Ross what he would charge to represent her in such a lawsuit and the mechanics involved in preparing the case. Ross asked Wolfe to interview some witnesses to help her decide whether to file suit. Several weeks later, Wolfe told Ross that he had been unsuccessful in contacting the witnesses but he was still working on it.

On June 12, 1985, Ross contacted the insurance company to obtain some information and, at that time, she learned that both policies had been paid. The insurance company verified that both checks had cleared and that one of the checks had been deposited into Wolfe's personal business account. Ross obtained copies of both checks which showed that Wolfe had in fact deposited one of the checks into his account and had forged her endorsement on that check.

Ross then retained another attorney who contacted Wolfe on June 20, 1985, and demanded repayment of the misappropriated funds plus interest in the total amount of $13,398.90. Approximately one week later, Wolfe delivered $13,500 to the second attorney. (Wolfe asserted that the additional amount was intended to cover attorney's fees incurred by Ross in retaining a second attorney.) Wolfe included with his check a handwritten letter apologizing for taking the money.

The parties stipulated, and the Grievance Committee found, that the respondent's conduct violated C.R.C.P. 241.6(1) (violate the provisions of the Code of Professional Responsibility) and C.R.C.P. 241.6(3) (violate the highest standards of honesty, justice, or morality). It was also stipulated and found that the respondent's conduct violated the Code of Professional Responsi-

bility, 7A C.R.S. (1973 & 1987 Supp.), DR 1–102(A)(1) (violate a disciplinary rule), DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law), DR 9–102(A) (failure to deposit client funds in a trust account) and DR 9–102(B)(1) (promptly notify client of receipt of funds).

After accepting the stipulation of facts, the hearing board held a hearing on what disciplinary sanction was appropriate. The respondent and four witnesses testified on his behalf. The hearing board recommended that the respondent be suspended for two years. Its recommendation was approved by a hearing panel of the Grievance Committee and submitted to this court.

## II.

This is the second time this case has come before this court. Initially, the parties reached a stipulation which recommended suspension of the respondent for two years with all but ninety days of the suspension stayed on condition that the respondent comply with the Rules of Professional Conduct, receive psychiatric counseling for one year or until terminated by his psychiatrist and contribute a minimum of 200 *pro bono* hours of legal services. By order dated July 2, 1986, we rejected the proposal as too lenient. Now a different panel of the Grievance Committee has considered the case and recommended an unconditional two year period of suspension. Both the respondent and the disciplinary prosecutor have filed exceptions to the recommended discipline. The respondent contends that the recommended two year suspension is too severe and the disciplinary prosecutor argues that Wolfe should be disbarred.

■ Wolfe first asserts that it was error for the hearing board to consider a letter of admonition issued to the respondent on December 29, 1986. In that letter, an inquiry panel of the Grievance Committee concluded that Wolfe had violated DR 9–102(B)(3) which requires an attorney to maintain complete records of all funds, securities,

and other properties of a client coming into the attorney's possession and to render appropriate accounts to his clients regarding them. The inquiry panel found that, in two instances involving two different clients, Wolfe failed to account for monies given to him by the clients. The first instance occurred in January 1986 and involved $100 in cash and the second instance occurred in April 1986 and involved a check for $200. Wolfe was admonished to keep accurate records and to record properly all payments made by his clients. Wolfe was advised of his right to contest the letter of admonition but did not do so. We see no error in the hearing board's consideration of the letter of admonition. C.R.C.P. 241.-15(a) expressly states that, in preparing its findings of fact and recommendation, "the hearing board shall take into consideration the respondent's prior disciplinary record, if any." The respondent was on notice that the hearing board would consider any prior discipline.

It is evident from the hearing board's Findings of Fact and Recommendation that it considered the prior letter of admonition to be significant. The board expressed its "shock, dismay and surprise" upon learning of the respondent's prior discipline because, throughout the hearing, the hearing board inferred from the statements of the respondent's counsel, the respondent and his witnesses that there had been no other discipline. The board's inferences in this regard are supported by the transcript.[1] The letter of admonition concerned conduct which occurred after the events in the Ross case. The admonition, however, was received by Wolfe approximately two months before the hearing board held its hearing in the Ross case and was part of Wolfe's prior disciplinary record within the meaning of C.R.C.P. 241.15(a).

The hearing board learned of the letter of admonition when it retired to deliberate. Consequently, it found that Wolfe's "rehabilitation had not been as successful as purported and that the picture of his character in that he could not be capable of such a violation again, had been greatly undermined." However, the board still concluded there was sufficient mitigation not to warrant the severe sanction of disbarment and not to warrant a three year suspension. It based its recommendation of a two year suspension on the letter of admonition to the respondent and the gravity of the violations involved.

In his exceptions, the respondent contends that the hearing board misconstrued the letter of admonition. He asserts that, first, the complaint on which the letter of admonition was based was made by two former associates in Wolfe's law office, not by clients. Second, he contends that the character of the offenses involved in the letter of admonition was substantially different from that involved in the Ross case. Although the hearing board mistakenly stated that the complainants were clients, we think the origins of the complaints are immaterial. The conduct involved in the letter of admonition was not as serious as his conduct in this case but we cannot agree that his conduct in the two matters was completely dissimilar. In the admonition case, the monies were paid for work Wolfe had performed and no clients were harmed by Wolfe. But, by failing to properly account for the funds, Wolfe deceived the other members of his firm and harmed or potentially harmed them by understating the firm's income.

We agree with the hearing board that the letter of admonition undercuts Wolfe's mitigation arguments, particularly his contention that the theft was an aberrant act, and reflects adversely on his assertion of

---

1. Wolfe's counsel examined his client concerning the aggravating and mitigating standards set forth in Standards 9.22 and 9.32 of the ABA Standards for Imposing Lawyer Sanctions. The following occurred during the respondent's examination by his counsel:

Q. The first item is a prior disciplinary matter association. Prior to this Ross matter, had you any prior disciplinary matters?

A. No, I had not.

It was followed by a second exchange between the respondent and his counsel:

Q. Now let's go to the items in mitigation. The first is absence of a prior disciplinary record.

A. That is correct.

There was a third similar question and answer.

full and free disclosure to the Grievance Committee. It was the respondent's decision to raise the issue of prior discipline in his testimony before the hearing board. Having made that choice, he cannot now complain about the success or failure of his tactics. Accordingly, we reject the respondent's contention that the recommended period of suspension be reduced.

### III.

The disciplinary prosecutor urges this court to disbar the respondent. She cites many cases in which we have disbarred attorneys who stole funds from their clients. *See, e.g., People v. Foster,* 733 P.2d 687 (Colo.1987); *People v. Quick,* 716 P.2d 1082 (Colo.1986); *People v. Fitzke,* 716 P.2d 1065 (Colo.1986); *People v. Loseke,* 698 P.2d 809 (Colo.1985); *People v. Buckles,* 673 P.2d 1008 (Colo.1984). She also points to various ABA Standards for Imposing Lawyer Sanctions (1986) stating that disbarment is generally appropriate. *See* Standard 4.11 ("[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client"); *see also* Standards 4.61, 5.11. In response, Wolfe notes that, when appropriate, this court has imposed sanctions less than disbarment in cases involving the theft of client funds including, *e.g., People v. Goss,* 646 P.2d 334 (Colo.1982) and *People v. Luxford,* 626 P.2d 675 (Colo.1981).

Our case law is consistent with ABA Standard 4.11 in that we generally impose the sanction of disbarment in cases involving the theft of client property. However, we do not find that disbarment is always appropriate in such cases. The commentary to Standard 4.11 notes that most states "reserve disbarment for cases in which the lawyer uses the client's funds for the lawyer's own benefit," a circumstance present in this case.

Evidence in mitigation was presented by the respondent to show that his misconduct was an aberrant act which would not be repeated. Prior to the theft, Wolfe enjoyed a reputation for good character. He had an excellent academic record and was viewed as a competent lawyer. He actively participated in his church by holding leadership positions, furnishing *pro bono* legal services to the church and some of its members, and teaching Sunday school and other classes. He testified to his great remorse and to the steps he has taken to rehabilitate himself, primarily by undergoing psychotherapy. Wolfe's therapist described him as a conscience-driven man who fully appreciates the wrongfulness of his conduct. The therapist described the theft as "a disastrous, explosive, single event," which he could not foresee recurring.

We have reviewed carefully the mitigating evidence presented by the respondent and have taken notice of the Grievance Committee's suspension recommendation. We find, however, that those considerations are outweighed by the very serious nature of Wolfe's misconduct and our responsibility to protect the public. Wolfe deliberately stole a large amount of money from his client for his own use, concealed the theft and actively deceived his client in an effort to cover up the theft. His client, not he, was the one who disclosed the theft. Wolfe made no effort to correct his misconduct until after his client learned, by chance, of the forgery and Wolfe was confronted by his client's new attorney. Although the respondent seeks credit for bringing the theft to the attention of the Grievance Committee, he reported his misconduct only after he knew that his client intended to contact the Grievance Committee and, in fact, she did so shortly after the respondent made his disclosure. Likewise, we do not consider Wolfe's forced repayment of his client's funds to be a mitigating factor.

The record clearly shows that the respondent stole his client's money because he experienced financial pressures caused by a personal lifestyle which was beyond his means and by high overhead in his law practice. He admitted that the stolen money was used to pay credit card bills. It was a dishonest act done for selfish reasons and we are not persuaded that this

was an aberrant act which will never be repeated.

We have noted in other attorney discipline cases that the theft of client funds is treated very seriously because it destroys the element of trust which is essential to the attorney-client relationship. Understandably, this kind of theft severely damages the public's perception of attorneys and its confidence in our legal system. *Buckles,* 673 P.2d 1008; *People v. Harthun,* 197 Colo. 1, 593 P.2d 324 (1979). We do not condone or excuse the respondent's actions. In this case, we think it is appropriate to follow the recommendation of ABA Standard 4.11 and disbar the respondent.

For these reasons, it is hereby ordered that Mark Manson Wolfe be disbarred from the practice of law effective thirty days after the date of this order as provided in C.R.C.P. 241.21(a) and that his name be stricken from the roll of attorneys licensed to practice in this state. It is further ordered that the respondent pay costs in the amount of $910.57 within thirty days of the date of this order to the Supreme Court Grievance Committee, Dominion Plaza, Suite 500S, 600 17th Street, Denver, Colorado 80202–5435.