The PEOPLE of the State of
Colorado, Complainant

v.

Peter D. NITSCHKE, Respondent.

No. 14PDJ067.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

May 13, 2015.

Following a sanctions hearing, the Presiding Disciplinary Judge disbarred Peter D. Nitschke (Attorney Registration Number 34313). The disbarment took effect on June 17, 2015.

Nitschke absconded with three-quarters of a million dollars from nine people, two of whom were elderly victims and many of whom were fellow churchgoers. He was convicted of nine felonies in California: two counts of theft from an elder, six counts of grand theft, and one count of fraud by insufficient fund check. The sentencing judge found that Nitschke committed these crimes with a high degree of callousness, planning, and sophistication, and sentenced Respondent to twelve years in prison.

Nitschke's criminal misconduct violated Colo. RPC 8.4(b) (proscribing criminal acts that adversely reflect on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects).

On April 21, 2015, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Geanne R. Moroye appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Peter D. Nitschke ("Respondent") did not appear. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *SUMMARY*

Respondent was convicted of nine felonies in California: two counts of theft from an elder, six counts of grand theft, and one count of fraud by insufficient fund check. The sentencing judge found that Respondent committed these crimes with a high degree of callousness, planning, and sophistication, and sentenced Respondent to twelve years in prison. The Court found, on default, that Respondent violated Colo. RPC 8.4(b), which proscribes criminal acts that adversely reflect on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. Based on this misconduct, the Court now disbars Respondent.

### II. *PROCEDURAL HISTORY*

On August 15, 2014, the People filed a petition requesting Respondent's immediate suspension. On August 18, 2014, the Court issued an order directing Respondent to show cause why he should not be immediately be suspended from the practice of law. Respondent did not respond. This Court issued a report to the Colorado Supreme Court on September 5, 2014, recommending that Respondent be immediately suspended. The Colorado Supreme Court followed that recommendation and immediately suspended him on September 10, 2014.

The People filed their complaint in this matter on September 23, 2014.[1] Respondent, however, did not file an answer. On November 10, 2014, the People filed a motion for default; when Respondent did not respond, the Court issued an "Order Entering Default Pursuant to C.R.C.P. 251.15(b)" on December 8, 2014. Upon the entry of default, the Court deemed all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[2] The Court set the sanctions hearing for April 21, 2015. Respondent did not appear at the sanctions hearing. The People called no witnesses but offered exhibits 1–8, which the Court admitted into evidence.

### III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[3] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 29, 2002, under attorney registration number 34313. He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[4]

On February 3, 2014, Respondent entered a plea of guilty to nine felony counts in the matter of *People v. Peter Davis Nitschke,* case number 12HF2546, Superior Court of California, Orange County:

- Count 1: Theft from elder, in violation of § 368(d) of the California Penal Code;
- Count 2: Theft from elder, in violation of § 368(d) of the California Penal Code;
- Count 3: Grand theft, in violation of § 487(a) of the California Penal Code;
- Count 4: Grand theft, in violation of § 487(a) of the California Penal Code;

---

**1.** On September 24, 2014, the People sent the complaint and citation by certified mail to Respondent's registered business address of 16520 Bake Parkway, Suite 105, Irvine, California 92618. *See* Ex. 1. The People also mailed the complaint and citation to Respondent's known current address at the time: CDCR # AU3158, D2–216U, WSTRC, P.O. Box 7700, Wasco, California 93280–7700.

**2.** *See* C.R.C.P. 251.15(b); *People v. Richards,* 748 P.2d 341, 346 (Colo.1987).

**3.** *See* exhibit 2, the People's complaint, for further detailed findings of fact.

**4.** *See* C.R.C.P. 251.1(b).

- Count 5: Grand theft, in violation of § 487(a) of the California Penal Code;
- Count 6: Fraud by insufficient check, in violation of § 476a(a) of the California Penal Code;
- Count 7: Grand theft, in violation of § 487(a) of the California Penal Code;
- Count 8: Grand theft, in violation of § 487(a) of the California Penal Code;
- Count 9: Grand theft, in violation of § 487(a) of the California Penal Code;
- Enhancement: Property loss of over $200,000.00, under § 12022.6(a)(2) of the California Penal Code; and
- Enhancement: Aggravated white collar crime over $500,000.00, under § 186.11(a)(2) of the California Penal Code.

Respondent was represented by counsel, signed a written waiver of his constitutional rights, admitted that he committed the crimes charged, and offered a factual basis for his guilty plea as to all nine counts.[5]

On June 20, 2014, a judgment of conviction was entered, and Respondent was sentenced to twelve years in California state prison.[6] The court stated that Respondent's crimes demonstrated a "high degree of callousness" and a "high degree of planning and sophistication."[7] At his sentencing, Respondent was ordered to pay more than $750,000.00 in restitution to his victims.

Through these actions, Respondent violated Colo. RPC 8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects) and C.R.C.P. 251.5(b) (grounds for discipline include any criminal act that demonstrates an attorney's dishonesty).

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards* ") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[8] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* By engaging in criminal conduct that included fraud, misappropriation, and theft, Respondent violated his duty to the public to conduct himself with integrity. As the ABA *Standards* explain, "The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct."[9]

*Mental State:* Respondent acted intentionally when he converted money and engaged in criminal activity. As mentioned above, Respondent's sentencing judge deemed Respondent's acts to have been carried out with "a high degree of callousness" and a "high degree of planning and sophistication."[10]

*Injury:* Referencing victim impact statements used in Respondent's sentencing, the People recited at the sanctions hearing how Respondent's defalcations harmed five separate groups of individuals.[11]

The first four counts on which Respondent was convicted involved theft of money bequeathed by Clara Jane Clayton on her passing in 2010 to Diane Clayton and Virginia Cottle—both elderly—as well as to David Cottle and Allison Broderick. All four victims were related. Respondent, who met and befriended these victims at church, convinced them that their inheritance would have to pass through probate. He assured them he

---

5. Ex. 4.

6. Ex. 3.

7. Ex. 3.

8. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

9. ABA *Standard* 5.0.

10. Ex. 3.

11. *See also* Ex. 5.

would take care of any necessary probate action and safeguard their funds in his trust account, making the money available to them whenever they needed it. When Diane Clayton was diagnosed with lung cancer, she requested that Respondent provide her money from her portion of the inheritance—just over $365,000.00—to pay for medical treatments. Respondent promised to provide her the funds but never did so. Likewise, when Virginia Cottle began to experience symptoms of dementia, her family asked Respondent to turn over her portion of the inheritance—more than $318,000.00—to fund her in-home care. Respondent pledged that he would do so, but he did not. With insufficient funds to pay for in-home care, Virginia Cottle's family was forced to place her in a nursing home. Both Broderick and David Cottle, grandchildren of Clara Jane Clayton who were promised $10,000.00 each, never saw a penny of the bequest. Respondent caused all four of these victims serious pecuniary and emotional injury.

Respondent also caused Katherine and Robert McDaniel serious financial injury. The McDaniels were referred to Respondent for legal work, but he persuaded them to entrust him with more than $30,000.00 of their funds to pursue an investment opportunity on their behalf. The McDaniels never heard from Respondent again. They hired another lawyer to recover their funds from Respondent, who promised to refund their money. Respondent made just one payment, however, and that check bounced.

David Van Skyrock met Respondent at church and hired him for representation in a civil suit. Van Skyrock gave Respondent $1,000.00 to do work on his matter, but Respondent never performed any work or refunded the money. Respondent thereby caused Van Skyrock financial injury.

Respondent was hired by Vicki Salvin to represent her in a suit against her homeowners' association for mold remediation. Respondent told Salvin that her case had settled for $22,500.00, out of which $3,650.00 was to be paid to a contractor. Respondent paid the contractor, but he never forwarded to Salvin her portion of the settlement proceeds, which totaled approximately $11,000.00. Salvin sustained serious financial injury due to Respondent's misconduct.

Finally, David Maffei retained Respondent to assist him with a foreclosure action, paying him $7,000.00. Respondent assured Maffei that he would stop the foreclosure. Instead, Maffei did not again hear from Respondent and never received a refund of his money. Maffei was seriously injured by Respondent's malfeasance.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Disbarment is the presumptive sanction under ABA *Standard* 5.11(a), which governs a lawyer's serious criminal conduct that involves, among other things, misrepresentation, misappropriation, or theft, as is the case here.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may warrant an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[12]

■ In this case, five aggravating factors are present. First, Respondent had a dishonest and selfish motive. He knowingly converted client money and was ordered to pay restitution of over $750,000.00 in his criminal proceeding.[13] Second, that Respondent engaged in criminal conduct against five separate groups of victims, leading to nine separate felony counts, evidences a clear-cut pattern of misconduct.[14] Third, two of Respondent's victims—Diane Clayton and Virginia Cottle—were elderly and in poor health, and therefore were vulnerable.[15] Fourth,

12. *See* ABA *Standards* 9.21 & 9.31.

13. ABA *Standard* 9.22(b).

14. ABA *Standard* 9.22(c).

15. ABA *Standard* 9.22(h). In recognition of the vulnerability of these victims, two of Respondent's nine felony counts charged theft from an elder in violation of § 368(d) of the California Penal Code.

Respondent was admitted to the Colorado bar in 2002, and he thus has substantial experience in the practice of law.[16] Finally, Respondent's failure to pay restitution to his victims, as ordered by the California tribunal, reflects his indifference to making restitution.[17] Because Respondent did not participate in the disciplinary proceeding, the Court is aware of only two mitigating factors—his lack of a prior disciplinary record [18] and the imposition of criminal penalties in California [19]—which the Court considers in mitigation.

### Analysis Under ABA *Standards* and Colorado Case Law

The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[20] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases." [21]

The Court has no trouble concluding that Respondent should and must be disbarred. Colorado case law illustrates that disbarment is the fitting sanction when a lawyer commits a serious felony involving theft, which necessarily involves a dishonest motive.[22] Those cases, coupled with the presumptive sanction and the preponderance of aggravating fac-

tors, all clearly point toward disbarment here. That Respondent callously stole over three-quarters of a million dollars from nine people, two of whom were elderly victims and many of whom were fellow churchgoers, makes obvious that Respondent has destroyed the element of trust essential to the attorney-client relationship, has severely compromised the public's confidence in attorneys, and cannot be trusted to serve as a member of the legal profession.

### V. CONCLUSION

This case presents one of most egregious instances of attorney misconduct the Court has yet seen: a blatant theft of vast sums of money from multiple victims. Respondent has caused nine people substantial harm and has done real damage to the profession's image. The Court readily imposes the presumptive sanction of disbarment.

### VI. ORDER

The Court therefore **ORDERS:**

1. **PETER D. NITSCHKE,** attorney registration number 34313, is **DISBARRED** from the practice of law **IN THE STATE OF COLORADO.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [23]

---

16. ABA *Standard* 9.22(i).

17. ABA *Standard* 9.22(j).

18. ABA *Standard* 9.32(a).

19. ABA *Standard* 9.32(k).

20. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

21. *In re Attorney F.,* 285 P.3d at 327 (quoting *In re Rosen,* 198 P.3d 116, 121 (Colo.2008)).

22. *See, e.g., In re DeRose,* 55 P.3d 126, 128 (Colo. 2002) (disbarring an attorney who pleaded guilty to felony charges after intentionally structuring financial transactions to avoid federal reporting requirements); *People v. Nearen,* 952 P.2d 371, 372 (Colo.1998) (disbarring an attorney who pleaded guilty to two felonies of securities fraud and money laundering); *People v. Jackson,* 943

P.2d 450, 457 (Colo.1997) (disbarring an attorney who engaged in fraudulent real estate transactions); *People v. Odom,* 941 P.2d 919, 920–22 (Colo.1997) (disbarring an attorney who knowingly removed from the State of Colorado an automobile subject to a security interest); *People v. Viar,* 848 P.2d 934, 936 (Colo.1993) (disbarring an attorney who pleaded guilty to bribery, a class three felony); *People v. Schwartz,* 814 P.2d 793, 794 (Colo.1991) (disbarring an attorney who was convicted of bankruptcy fraud); *People v. Goens,* 803 P.2d 480, 483 (Colo.1990) (disbarring an attorney who forged estate representatives' signatures and converted funds from an estate for his own use); *People v. Brown,* 726 P.2d 638, 639 (Colo.1986) (disbarring an attorney who was convicted of forgery, a class four felony).

23. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **MUST** file any application for stay pending appeal with the Court **on or before Wednesday, June 3, 2015.** No extensions of time will be granted. Any response thereto **MUST** be filed within seven days, unless otherwise ordered by the Court.

5. A statement of costs was admitted at the hearing as exhibit 8. That statement reflects a total of $191.00 expended by the People as costs and expenses in this matter. Respondent **SHALL** pay the costs of these proceedings. **On or before Wednesday, June 10, 2015,** Respondent **SHALL** pay $191.00 to:

Office of Attorney Regulation Counsel

Attn: Geanne Moroye

1300 Broadway, Suite 500

Denver, CO 80203

