The PEOPLE of the State of
Colorado, Complainant,

v.

Ronald S. FITZKE,
Attorney-Respondent.

No. 85SA308.

Supreme Court of Colorado,
En Banc.

Jan. 13, 1986.

Linda Donnelly, Disciplinary Prosecutor Denver, George S. Meyer, Deputy Disciplinary Prosecutor Denver, for complainant.

Ronald S. Fitzke, Denver, pro se.

ROVIRA, Justice.

On August 30, 1984, the respondent, Ronald S. Fitzke, was suspended from the practice of law in Colorado during the pendency of disciplinary proceedings against him. We now order that the respondent be disbarred and order that he pay the costs of the disciplinary proceedings.

A formal complaint was filed with the Supreme Court Grievance Committee, charging the respondent, who was admitted to practice law in Colorado on October 16, 1981, with unprofessional conduct in violation of the Code of Professional Responsibility.

Prior to proceedings before the Hearing Board of the Grievance Committee, the respondent entered into a Stipulation of Facts with the Disciplinary Prosecutor. The stipulation states in pertinent part:

1. Respondent has taken and subscribed the Oath of Admission, was admitted to the Bar of this Court on October 16, 1981, and is registered as an attorney upon the official records of this Court, Registration No. 11256. He is accordingly subject to the jurisdiction of this Court and its Grievance Committee in these proceedings.

2. Respondent is twenty-eight years old. He graduated from law school at the University of Denver in 1981 and was admitted to practice in Colorado in October, 1981. He relocated to his home state of Nebraska and, in April, 1982, went into practice with his father in Hastings, Nebraska.

3. On January 5, 1983, Respondent was appointed temporary guardian and temporary conservator for Allie Marie Boontjer, who was elderly and incapacitated. On February 2, 1983, Respondent was appointed guardian; on March 7, 1983, he was appointed conservator. Ms. Boontjer's property was limited; but, while serving as conservator for Ms. Boontjer, Respondent took approximately $19,000 from the estate and converted it to his own use.

4. On October 23, 1983, Respondent returned to Colorado to enter a residential substance abuse program for cocaine addiction and alcohol abuse at St. Luke's Hospital in Denver. At about that time, he disclosed to his father, Ronald R. Fitzke, that he had taken the funds. With his father's help, complete

restitution, including interest, was made to the estate. Upon discharge from the St. Luke's program, Respondent entered Alcoholics Anonymous and Narcotics Anonymous programs.

5. In June, 1984, a report or audit was due to be filed with the Veteran's Administration in Nebraska concerning the conservatorship for Ms. Boontjer. Respondent understood that a truthful accounting would need to be made concerning the embezzlement from the estate. On June 1, 1984, Respondent met with the Veteran's Administration and tendered to them a written confession of the embezzlement. A copy of it is attached hereto as Exhibit A.[1] Immediately afterwards Respondent informed the law enforcement authorities and the court of the embezzlement. Respondent tendered a written confession to the Court at that time which is attached hereto as Exhibit B. On June 20, 1984, the County Attorney of Adams County, Nebraska, prepared and signed a complaint for theft against the Respondent. On September 26, 1984, Respondent entered a plea of *nolo contendere* to the Nebraska theft charges. On March 18, 1985, Respondent was sentenced in that case. He was placed on probation for four years under certain conditions including restitution (which had already been made) and compliance with all conditions of probation imposed by Colorado in *People v. Fitzke*, 84CR1892, Denver District Court. A copy of the Nebraska Order of Probation is attached hereto as Exhibit C.

6. On August 27, 1984, the Nebraska Supreme Court temporarily suspended Respondent from practicing law in Nebraska. Respondent voluntarily surrendered his license and consented to the entry of disbarment against him in Nebraska, and the Supreme Court of Nebraska vacated his admission to that state on January 23, 1985.

7. The foregoing conduct of the Respondent violates Rules 241.6 and 241.17 of the Colorado Supreme Court Rules concerning discipline of attorneys and also violates the Code of Professional Responsibility, DR1–102(A)(1), DR1–102(A)(3), DR1–102(A)(4), DR1–102(A)(6), and DR9–102(B)(4).

8. On June 30, 1984, ... the complaining witness herein, met with Respondent for an initial consultation concerning a dissolution of marriage. On that day, both [the complaining witness] and Respondent signed a written fee agreement providing for a total fee of $350.00, plus $82.00 in costs. The agreement provided, "[w]hen half the attorney's fees is paid, we will prepare the paperwork; when your account is paid in full, we will file the case." [The complaining witness] paid Respondent $216.00 on July 7, 1984. Respondent hand drafted a receipt to her and signed it "R. Scott Fitzke, Hyatt Legal Services."

9. [The complaining witness] did not hear from Respondent and, on August 6, 1984, she called Hyatt Legal Services and was told that Respondent no longer worked there and that her case was being handled by Philip James, Esq. At the time Mr. James spoke with [the complaining witness] he had not yet located her file and was unaware of any payments she had made to Hyatt Legal Services. Respondent, however, on July 18, 1985, had made a written confession to Roger Barrick, a member of the Hyatt Legal Services management, of various matters of wrongdoing which specifically referenced [the complaining witness]. A copy of that document is attached hereto as Exhibit D.

10. [The complaining witness] filed her Request for Investigation with the Grievance Committee on August 22, 1984. Hyatt Legal Services subsequently found her file, and Mr. James is proceeding with her divorce.

11. The foregoing conduct of the Respondent violates Rule 241.6 of the Colo-

---

1. The exhibits referred to in the stipulation are not necessary for a full understanding of the pertinent facts and are not included in this opinion.

rado Supreme Court Rules concerning discipline of attorneys and also violates the Code of Professional Responsibility, DR1–102(A)(1), DR1–102(A)(3), DR1–102(A)(4), DR1–102(A)(6), and DR9–102(B)(4).

. . . .

14. On July 13, 1984, Respondent was charged with possession of a controlled substance, a class three felony. *People v. Ronald S. Fitzke,* 84CR1892, Denver District Court. On or about the same day, Respondent was terminated by Hyatt Legal Services. On March 11, 1985, Respondent pled guilty to a Class 4 felony of unlawful possession of a controlled substance. A sentence of four years to the Department of Corrections was suspended under certain terms and conditions including payment of restitution to Hyatt Legal Services and therapy for drug and alcohol abuse. A copy of the Judgment and Order is attached hereto as Exhibit E.

15. After Respondent's termination, it was discovered that Respondent had converted in excess of $3,000.00 of client monies from Hyatt clients to his own use and had forged a client's signature on a client refund check for $420.00 and appropriated that amount for himself. As stated above Respondent is to make restitution to Hyatt Legal Services.

16. Hyatt Legal Services brought criminal charges against Respondent; and on December 3, 1984, *People v. Ronald Scott Fitzke,* 84CR1461, was filed in Arapahoe County District Court. Respondent was charged with theft, a class-four felony. On March 21, 1985, this case was dismissed based on the disposition reached in the criminal action in Denver District Court.

17. On August 30, 1984, the Colorado Supreme Court suspended Respondent from the practice of law following the filing of a Petition for Immediate Suspension.

18. The foregoing conduct of the Respondent violates Rule 241.6 of the Colorado Supreme Court Rules concerning discipline of attorneys and also violates the Code of Professional Responsibility, DR1–102(A)(1), DR1–102(A)(3), DR1–102(A)(4), DR1–102(A)(6), and DR9–102(B)(4).

Based on the stipulation and testimony of the respondent, the Hearing Board found that the respondent: (1) embezzled funds from the Estate of Allie Boontjer; (2) was convicted of theft in the District Court of Adams County, Nebraska, and was also convicted of unlawful distribution and possession of a controlled substance, a class 4 felony, in the District Court in and for the City and County of Denver; (3) consented to an entry of disbarment in Nebraska; and (4) converted to his own use monies belonging to his employer.

The Hearing Board found respondent's conduct to be in violation of C.R.C.P. 241.6 and 241.17, and the following disciplinary rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(3) (engaging in illegal conduct involving moral turpitude); DR1–102(A)(4) (engaging in conduct involving dishonesty); DR1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law); and DR9–102(B)(4) (failing to pay or deliver funds or properties to a client).

Recognizing that C.R.C.P. 241.17(d) [2] requires that the same discipline be imposed in Colorado as was imposed in Nebraska, unless the imposition of the same discipline would result in a grave injustice, the Hear-

---

**2.** C.R.C.P. 241.17(d) provides in pertinent part:
    At the conclusion of proceedings brought under this Rule, the hearing panel shall refer the matter to the Supreme Court with the recommendation that the same discipline be imposed by the Supreme Court as was imposed by the foreign jurisdiction unless it is determined by the hearing panel that:

    . . . .
    (3) The imposition by the Supreme Court of the same discipline as was imposed in the foreign jurisdiction would result in grave injustice. . . .

ing Board concluded that disbarment in Colorado would be unjust. In support of its conclusion, the Hearing Board noted that the respondent had no prior record of discipline, and he did not minimize the seriousness of his acts, nor did he attempt to justify his acts. Further, it found that respondent voluntarily sought treatment for his addiction and appears to understand the gravity of his addiction, that he confessed before the affected parties were aware of his wrongdoing, that he cooperated with law enforcement agencies, and that "it has been the express objective of the Hearing Panel and the Bar to attempt rehabilitation in situations involving drug and alcohol dependency."

The Hearing Board recommended that the respondent be suspended from the practice of law for three years, that he be authorized to apply for reinstatement upon making a satisfactory showing that he has complied with all conditions of probation, that he has made full restitution, and that he no longer suffers from drug and alcohol dependency. Hearing Panel A approved the Hearing Board's Findings of Fact, Conclusions and Recommendations.

When the matter was submitted to this court, we entered an order requiring the respondent to show cause why he should not be disbarred. A response was filed in which respondent argued that C.R.C.P. 241.17(d)(3) applies to the facts of this case and that the recommendation of the Hearing Panel should be adopted by this court.

Respondent contends that he surrendered his license to practice law in Nebraska because he could not afford to have his Nebraska attorney proceed any further with the case; that his Nebraska and Colorado counsel failed to inform him of the possible effect of the Nebraska disbarment in disciplinary proceedings in Colorado; and, if he had been aware of the provisions of C.R.C.P. 241.17, he would not have surrendered his license in Nebraska.

Respondent also asks us to recognize, as did the Hearing Panel, that his misconduct occurred as a result of his drug and alcohol addiction, that recovery is possible, that he is indeed recovering from his addiction, and that he should be given the opportunity to further demonstrate his recovery after the period of suspension expires. Finally, he argues that a three-year suspension will ensure that his recovery has a solid foundation and will provide a sufficient period for him to demonstrate that he is fit to practice law.

The purpose of disciplinary proceedings is not to punish but, rather, to protect the public, the courts, and the legal profession. Although we have always given the recommendation for discipline by the Grievance Committee great weight, we exercise our independent judgment in arriving at the appropriate degree of discipline. Our final determination on matters of attorney discipline is based not only upon the attorney's misconduct but also the public interests involved.

The respondent does not contest any of the facts in the stipulation; he only challenges our possible rejection of the Hearing Panel's recommendation. Respondent proffers his lack of resources to contest his Nebraska disbarment, the failure of his counsel to advise him of the consequences of that disbarment in disciplinary proceedings in Colorado, and his drug and alcohol addiction as mitigating circumstances.

In *People v. Loseke*, 698 P.2d 809 (Colo. 1985), the respondent pled guilty to a charge of violating 18 U.S.C. § 1005 (1982), a felony. The Hearing Panel recommended that the respondent be disbarred. The respondent argued that suspension was the appropriate discipline because he made full restitution, he cooperated with the authorities, and he had psychological problems which precipitated his illegal activity. We rejected his request for suspension and ordered disbarment. We see no significant difference between *Loseke* and the case at bar. The principles enunciated there are equally applicable here.

In considering the nature of a disciplinary offense, we are not insensitive to the personal problems of a lawyer who becomes addicted to alcohol or drugs. While respondent's recognition of his addiction

and his efforts to overcome that addiction are commendable, "they do not override his responsibility to act in accordance with the highest standards of justice, ethics, and morality." *Loseke,* 698 P.2d at 810.

In upholding our responsibility to protect the public interest, we cannot ask the public to bear the risk that respondent will not be able to overcome his difficulties. Disbarment prohibits a lawyer from applying for readmission for eight years. C.R.C.P. 241.22(a). We believe that evidence of rehabilitation after that period will more clearly demonstrate respondent's fitness to practice law than will a three-year suspension.

Accordingly, it is ordered that the respondent be disbarred and his name be stricken from the roll of lawyers authorized to practice before the Supreme Court. Costs of $162.35 are assessed against the respondent and must be paid within sixty days from the date of the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 500 South, Denver, Colorado 80202.