The **PEOPLE** of the State of Colorado, Complainant,

v.

**Paul J. GERDES, Attorney–Respondent.**

No. 89SA327.

Supreme Court of Colorado, En Banc.

Oct. 16, 1989.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Michael D. Gross, Colorado Springs, for attorney-respondent.

Justice ERICKSON delivered the Opinion of the Court.

In this disciplinary proceeding the hearing panel of the Grievance Committee has recommended that the respondent, Paul J. Gerdes, be disbarred, assessed the costs of these proceedings, and that he be ordered to make restitution of the funds which he converted and fees that were overcharged. We agree with the recommendation and order that Paul J. Gerdes be disbarred, and that his name be stricken from the roll of attorneys authorized to practice before this court. We also order that he pay the cost of these proceedings and that he make restitution to Charles Allen Spurlock of $13,303 of trust funds Spurlock was to receive as a beneficiary in the will of Frances L. Smith, together with interest pursuant to section 5–12–106(2), 2 C.R.S. (1988 Supp.). He is also ordered to pay the estate of Rose C. Cizek $471 for funds that he misappropriated, together with interest at 8%. No petition for reinstatement will be considered by this court until full restitution has been made.

## I.

Paul J. Gerdes was licensed to practice law in the State of Colorado on March 4, 1960, registration number 0599, and is subject to the disciplinary jurisdiction of the Colorado Supreme Court and its Grievance Committee. C.R.C.P. 241.1(b). Respondent is sixty-three years old and began his law practice in 1952 in Nebraska. He practiced with several individuals and had a general practice until his practice evolved into the business and corporate area in the late 1970s. When he concentrated on a business practice, he participated in the business activities of his clients and eventually suffered substantial financial losses. By 1984 he had severe financial problems. He had refinanced his house at a very high interest rate and his law partnership had broken up. It was at that point in time that he began taking money out of estates that he was handling with the hope that one of his business ventures would produce income to repay the estate. The respondent has sizable obligations to the Internal Revenue Service for both taxes and penalties, and has stated that there are approximately $200,000 in outstanding claims against him at this time. As a result of the charges that were made in this case, the respondent was summarily suspended in October 1988. Since that time he has been working as a law clerk.

## II.

The hearing board heard testimony from the respondent and from William Lederer, the attorney who took over his practice, and who now employs Gerdes as a legal assistant. The board also had a six-page written stipulation of facts that was signed by both counsel and the complainant.

On April 29, 1985, Rose C. Cizek died testate. Pursuant to the decedent's will, the respondent was appointed personal representative of the estate and agreed to handle the legal work for the estate. On June 10, 1985, the respondent secured a loan on behalf of the estate from the Bank of Aurora in the principal amount of $11,-409 to pay immediate costs incurred by the estate and legal fees which he asserted he had incurred. The loan was secured by a second deed of trust encumbering the house owned by the estate.

The respondent spent twenty-five hours working on the estate during the calendar year 1985. It was agreed that he was to be paid $100 per hour and he asserted that a total fee of $2,500 was incurred. During that period of time he actually charged $3,469 for legal fees and $95 for costs. Between May 1, 1985 and June 12, 1985, respondent expended 15.6 hours of time, but paid himself $2,000 which amounted to a $440 overpayment. When an heir dis-

puted the amount of time spent by the respondent, the respondent reduced the time to a total of 10.6 hours but failed to reimburse the estate for the overpayment and did not account for the inflated hours.

On January 20, 1986, the residence owned by the estate was sold. The settlement proceeds to the estate, after satisfying the encumbrances, were $46,619.47. On January 24, 1986, the respondent deposited the proceeds in a new account at the Pioneer Bank in Fountain, Colorado. On the same day that the deposit was made, the respondent withdrew $5,000 in cash. In addition, he withdrew the following funds from the account on the dates indicated: February 18, 1986, $1,000; February 28, 1986, $750; March 15, 1986, $750; March 27, 1986, $1,000; March 31, 1986, $750; April 15, 1986, $750; April 22, 1986, $850; April 28, 1986, $750; July 25, 1986, $350; July 29, 1986, $200; August 4, 1986, $250; and September 22, 1986, $190.

On March 18, 1986, the respondent withdrew $34,435 and purchased eight cashier checks payable to the estate beneficiaries. The eight cashier checks totaled $32,335. The remaining $2,100 was appropriated in cash by the respondent who did not acknowledge that the sum was taken from the account. Over a nine-month period the respondent withdrew $14,690 that was not paid to the estate beneficiaries. He acknowledged withdrawing $11,650 for his personal use. In addition, the estate incurred $74.50 in service charges generated by the respondent withdrawing the funds as well as additional attorney fees of at least $450 that were paid to another attorney to close the estate.

In February 1987, one of the heirs retained an attorney to investigate the failure to promptly distribute the balance of the estate. The attorney discovered the missing funds and advised his clients and other heirs of the defalcations. Respondent, when confronted with the shortage, obtained counsel, and forwarded $15,000 to counsel for the heirs. The $15,000 allegedly represented the principal amount of $11,650 plus interest at 8%. The respondent calculated the total amount owed to the estate at $15,471.89. Respondent and his counsel proposed to pay the estate $15,000 in May 1987, and the remaining $471.89 at a later date. The $471.89 has not been paid.

The second series of defalcations were in the Frances L. Smith estate. Frances L. Smith died on June 12, 1977 and the respondent was named as personal representative for the estate and as trustee of the testamentary trust established for the deceased's grandson, Charles Allen Spurlock, a minor. The will divided the estate between the deceased's daughter and Charles Allen Spurlock, equally. Since Spurlock was a minor, his share was to be held in trust until he reached the age of twenty five.

On December 7, 1977, following distribution to the daughter, the respondent opened an account with Columbia Savings of Colorado Springs for Charles Allen Spurlock. An initial deposit of $10,000 was made into the account with the respondent naming himself as the account holder for Charles Allen Spurlock. On September 23, 1985, an Ohio court appointed a lawyer as guardian ad litem for Charles Allen Spurlock. The Ohio court and relatives of Charles Allen Spurlock informed the guardian ad litem that a trust had been created on the minor's behalf in Colorado. To verify the existence of the trust, the guardian ad litem tried unsuccessfully for two years to communicate with respondent. The respondent did not respond to several phone inquiries and numerous written inquiries, and ignored requests from the Ohio court and from the guardian ad litem for funds for the minor.

On May 23, 1988, the Grievance Committee investigator obtained the account files from Columbia Savings of Colorado Springs. The account files reflected withdrawals made by the respondent totalling $13,300 between June 15, 1982, and September 3, 1982. None of those funds were received by Charles Allen Spurlock. The respondent admitted to the Grievance Committee investigator that he had converted $8,500 of the funds for his own personal

use and benefit, and then failed to account for the remaining $4,800.

## III.

The respondent was engaged as both personal representative and counsel for the Rose C. Cizek estate and converted funds from that estate to his own benefit. He repaid $15,000 of the funds taken, but still owes at least $471 to the beneficiaries and heirs of that estate. He also overcharged the estate for services as personal representative and attorney for the estate and, but for the complaint of the heirs, the overcharge of fees would not have been discovered.

While engaged as either the personal representative, trustee, or attorney in the Cizek and Smith matters, the respondent took clients' funds on numerous occasions and the funds have not been repaid. He billed the Cizek estate for time that he did not spend on estate matters. He also failed to return inquiries relating to the Smith estate and the account that he held in trust for Charles Allen Spurlock. The respondent, in connection with the investigation of the Cizek complaint, failed to make candid disclosure about the Spurlock case and it is undisputed that the respondent converted $13,300 of the trust funds of Charles Allen Spurlock to his own use.

It is clear that damage was suffered by both the Cizek estate and by the Smith estate as a result of the respondent's conduct. By converting money from both an estate and from a trust to his own use without repaying those funds, and by overcharging for services he rendered as a lawyer, the respondent violated C.R.C.P. 241.6 regarding the discipline of attorneys and the Code of Professional Responsibility, DR 1–102(A)(1) (ABA Model Rule 8.4(a)); DR 1–102(A)(4) (ABA Model Rule 8.4(c)); DR 1–102(A)(5) (ABA Model Rule 8.4(d)); DR 1–102(A)(6); DR 6–101(A)(3) (ABA Model Rule 1.3); DR 7–101(A)(2); DR 7–101(A)(3); DR 9–102(B)(3) (ABA Model Rule 1.15); and DR 9–102(B)(4) (ABA Model Rule 1.15).

The ABA Standards for Imposing Lawyer Sanction (1986) (ABA Standards) and, particularly subsection 4.11, indicate that disbarment is an appropriate remedy when a lawyer knowingly converts clients' property to his own use and causes injury to a client.

In viewing section 9.0 of the ABA Standards on aggravation and mitigation, the following aggravating factors appear. There was a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and deceptive practices to conceal his wrongdoing during the disciplinary process. He also had substantial experience in the practice of the law. The mitigating factors are limited to the respondent's prior unblemished disciplinary records and his partial repayment of funds. The respondent appears to be remorseful, but the aggravating factors far outweigh the mitigating factors. Disbarment has been the order of this court when other lawyers violated the code and the rules of this court by converting the funds of their client or of estates or trusts in their care to their own use. *See People v. Shafer,* 765 P.2d 1025 (Colo.1988); *People v. Score,* 760 P.2d 1111 (Colo.1988).

Accordingly, it is ordered that respondent Paul J. Gerdes be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court. It is further ordered that the respondent pay costs in the amount of $1,023.50 within sixty days from the date of this opinion to the Supreme Court Grievance Committee, Dominion Plaza, Suite 500S, 600 17th Street, Denver, Colorado 80202–5435. The respondent is also ordered to make restitution of the trust funds of Charles Allen Spurlock, a beneficiary in the will of Frances L. Smith in the amount of $13,303, and that he pay the estate of Rose C. Cizek $471 for funds that he misappropriated and $1,469 for fees overcharged, together with interest pursuant to section 5–12–106(2), 2 C.R.S. (1988 Supp.).