**The PEOPLE of the State of Colorado, Complainant,**

v.

**Bernard J. O'LEARY, Attorney–Respondent.**

**Nos. 89SA135, 89SA219.**

Supreme Court of Colorado, En Banc.

Nov. 13, 1989.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Deputy Disciplinary Counsel, Denver, for complainant.

Bernard J. O'Leary, pro se.

Justice ERICKSON delivered the Opinion of the Court.

Two separate disciplinary proceedings have been consolidated for the purpose of this opinion. The Hearing Panel in 89SA219 recommended that the respondent be suspended for a period of three years for continuing to practice law after he was suspended and for his failure to notify his clients of the suspension and of his inability to act as their lawyer during his suspension. C.R.C.P. 241.21(b). In 89SA135 the Hearing Panel recommended that the respondent be disbarred and that he refund a fee and make restitution of funds he misappropriated from a client and put to his own use. The Hearing Panel in both cases recommended that the respondent pay the costs of these proceedings and imposed statutory interest on the unpaid funds until restitution is made. We approve the Hearing Panel's recommendation. We order that Bernard J. O'Leary be disbarred, that his name be stricken from the attorneys authorized to practice before this court, and that he make restitution, refund a fee, pay the costs incurred in this proceeding, and interest in accordance with the directions contained in this opinion.

### I.

Bernard J. O'Leary was admitted to practice law in Colorado on January 9, 1950,

registration number 3306, and is subject to the jurisdiction of the Colorado Supreme Court and its Grievance Committee in these disciplinary proceedings. C.R.C.P. 241.1(b). He has an extended disciplinary record which includes two letters of admonition, a private censure, and a thirty-day suspension.

His first letter of admonition was issued on January 20, 1975, when the respondent failed to honor his fee agreement with his client. He was also admonished for his failure to keep adequate records of funds he received on behalf of his client, and for not remitting promptly the funds to his client. On October 6, 1975, a second letter of admonition was issued to the respondent when he notified a client of a trial date the evening before trial and did not properly or adequately prepare for the trial. On March 6, 1984, he was privately censured for his handling of a conservatorship and for charging an excessive fee, neglect, and conduct adversely reflecting on his fitness to practice law. On February 1, 1988, his failure to properly represent another client in a driving under the influence charge resulted in a thirty-day suspension. *People v. O'Leary*, 752 P.2d 530 (Colo.1988). After the suspension order was entered the respondent failed to comply with the notice requirements of C.R.C.P. 241.21(b), and continued to practice law. He also misrepresented facts regarding his compliance with C.R.C.P. 241.21(b) to the Grievance Committee. The respondent's failure to comply with the Code of Professional Responsibility has caused his clients to suffer substantial hardships and financial losses.

We agree with the Hearing Panel's recommendation that the thirty-day suspension in 89SA219 should be extended and that additional sanctions should be imposed for the failure of the respondent to comply with the order of suspension and the rules of this court. However, his failure to comply with the suspension order pales when compared to the misconduct established during the hearing on the disciplinary complaint in 89SA135 which supports the recommendation that the respondent be disbarred. During all of the disciplinary proceedings the respondent has demonstrated a lack of candor and has failed to cooperate in the investigation. He has not, at any time, acknowledged his wrongdoing or his failure to comply with the Code of Professional Responsibility and the rules of this court.

## II.

Respondent was retained to represent Joseph B. Vernetti when the Department of Social Services sought to collect delinquent support payments. In a dissolution of marriage decree in Fremont County, Vernetti was ordered to pay $405 per month for the support of his three minor children. When he failed to make prompt payments his ex-wife began to collect public assistance. In due course the Department of Social Services sought to collect the arrearage. In December 1984, Vernetti was notified that proceedings would be instituted to seize his federal tax refund and to garnish his wages if the arrearage was not paid. In 1985, the district attorney filed an action in the El Paso County District Court to register the support order from Fremont County. On February 13, 1985, the clerk issued a notice of registration and sent it to Vernetti indicating delinquent support in the amount of $18,330. Vernetti retained the respondent on March 5, 1985, paid him $750, and provided him with receipts showing payment of approximately $8,000 in support that had not been credited by the Department of Social Services.

On March 25, 1985, the respondent filed a one page motion to vacate the registration which failed to set forth any legal basis or defense to the claim of back support except that Vernetti had been denied visitation rights with his children. The motion was denied on May 5, 1985, and nothing further was filed by the respondent. On June 5, 1985, the court entered judgment against Vernetti for $19,545. In May 1985, Vernetti received notice from the Internal Revenue Service that a portion of his federal tax refund had been sent to the Department of Social Services. The respondent refused to return Vernetti's telephone calls and could not be reached until June 1985. When Vernetti met with the

respondent, the respondent agreed to seek recovery of the refund for an additional fee of $250. Respondent was paid the $250, but did nothing to pursue recovery of the refund and additional funds were withheld by the Internal Revenue Service.

In a garnishment proceeding in July 1985, Vernetti's wages were attached leaving him with just 45% of his net pay. Again, Vernetti could not reach the respondent. In August, when Vernetti met with the respondent, a promise was again made that he would proceed to seek determination of the actual amount of support owed in a timely manner. In December nothing had been done and the respondent again agreed to pursue the matter but only if an additional $250 was paid. The sum was paid, but again the respondent did nothing and failed to return Vernetti's calls. After a grievance was filed, the respondent contacted Vernetti and once again promised to proceed but did nothing. Eventually Vernetti secured new counsel and the matter was promptly concluded.

Before the Hearing Board the respondent claimed that Vernetti hired him to look into the registration of the foreign support order and to attempt to locate his children so that the he could seek a change in custody. He claimed that he was not hired to seek recovery of Vernetti's tax refund or to put a stop to the garnishment of Vernetti's wages. The Hearing Board found that the respondent's version of what he was retained to do was not credible. Given Vernetti's circumstances and his continued efforts to contest the claim for unpaid support after he secured new counsel, the Hearing Board found that it defied common sense to believe that Vernetti was not interested in resolving the support issue.

### III.

The respondent represented Donald F. Bensen who was sentenced on August 2, 1984, to serve two concurrent eight-year sentences for unlawful possession of controlled substances. At the time of incarceration Bensen was receiving social security disability benefits. Bensen directed that his benefit checks be sent to the respondent at his law office rather than to him. He also signed a power of attorney authorizing the respondent to negotiate the checks.

The respondent received the first check in August 1984 and the last check was received in September 1986. The checks were deposited into the respondent's office account because he did not have a trust account. In 1984, each monthly check was in the amount of $615. In 1985, the payments increased to $636 per month, and in 1986, each check was for $656. The respondent regularly disbursed the money that he received to Bensen, or for his benefit, from August 1984 to July 1985. After July 1985, no monies were disbursed, although Bensen periodically made demands on the respondent for the money and for an accounting. The respondent failed to deliver any funds to Bensen and failed to provide an accounting. The accounting that the respondent provided the Hearing Board was totally inadequate, and failed to provide a basis for arriving at the total amount that the respondent received and disbursed.

The failure to maintain adequate records pertaining to a client's funds is not only no excuse whatsoever for failing to provide an adequate and timely accounting to the client, see *Matter of Fleisher*, 102 N.J. 440, 508 A.2d 1115 (1986), but is also a violation of DR 9–102(B)(3).

Respondent admitted that he received $13,452 and disbursed approximately $6,942.24 to or for Bensen, which left a difference of $6,509.76. Prior to July 1985, the respondent treated the money as though it belonged to Bensen, although it was not deposited into a trust account as it should have been. The Hearing Board found that the funds were trust funds and that the respondent had failed to account for between $5,066.76 and $6,509.76. In September 1986, when the respondent should have been holding at least $5,066.76 for Bensen, his office account was overdrawn. It would appear that the total amount that the respondent failed to account for was more than that found by the

Hearing Board. One member of the Hearing Board concluded that the respondent received four additional benefit checks in 1985 that were unaccounted for and would have ordered restitution in the amount of $7,610.76. We cannot make new findings of fact in resolving the accounting issues in this disciplinary complaint and must leave a final accounting for resolution by Bensen and the respondent.

In November 1986, when Bensen filed a grievance, the respondent endeavored to persuade him to withdraw the complaint and Bensen did write the Grievance Committee. At the hearing, Bensen testified that he attempted to dismiss the grievance so that the respondent would return his money to him.

The respondent claimed that he had an agreement with Bensen that each benefit check would constitute either payment for services already rendered or a retainer for services to be rendered. The agreement which the respondent testified to was never reduced to writing and allegedly provided that if Bensen and the respondent determined in any given month that the respondent had not earned the amount of the check then the respondent would disburse the remainder to Bensen. Respondent characterized the benefit checks as common law retainers and the disbursements as loans in the nature of gifts which he never expected Bensen to repay. However, evidence before the Hearing Board revealed that on occasion the respondent sought Bensen's approval for the deduction of attorney fees and the right to make other distributions.

The inconsistencies in these explanations regarding the receipt, retention, and disbursement of the social security disability funds were not lost on the Hearing Board and the issues were resolved adversely to the respondent.

## IV.

The Hearing Panel recommended that the respondent be disbarred. The respondent, although he was asked to address the proper sanction for his professional misconduct, stated that he did not believe he should be disbarred, but offered no evidence of mitigation or any basis for imposing a lesser sanction.

The respondent's extended record of prior discipline has been addressed in an earlier section of this opinion and reflects the respondent's repeated failure to protect or recognize his former clients' rights and interests. His unprofessional conduct in these combined cases, and in prior disciplinary proceedings, demonstrates the respondent's unfitness to practice law. DR 1-102(A)(6). His failure to honor his agreements with his clients and his total neglect of legal matters entrusted to him constitutes violations of both DR 6-101(A)(2) and DR 6-101(A)(3). He also failed to comply with C.R.C.P. 241.6 and DR 1-102(A)(1), by violating numerous disciplinary rules.

The respondent's neglect of legal matters over an extended period of time must be considered to be willful. *People v. May*, 745 P.2d 218 (Colo.1987). In his representation of Vernetti for failure to pay child support, the respondent not only took no action for months, but also renewed his promise to perform legal services for additional fees, and then failed to do anything to honor his agreement with his client after the fees were paid.

The Hearing Board found that, in representing Bensen, the respondent violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation in the handling and disbursing of his client's funds. He also violated DR 9-102(A) by failing to deposit his client's funds in a trust account and by commingling his funds with his client's. The respondent's failure to maintain complete records of the funds of his client that came into his possession violates DR 9-102(B)(3). The requirements of DR 9-102(B)(4) were violated when the respondent failed to deliver the funds to his client. The respondent's attempt to have Bensen withdraw his grievance complaint to obtain funds which the respondent held violated DR 1-102(A)(5) and (6), was prejudicial to the administration of justice, and reflects adversely on his fitness to practice law.

The American Bar Association Standards for Imposing Lawyer Sanctions support disbarment as the proper sanction under these circumstances. Standard 4.11 provides: "Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *See People v. Costello*, 781 P.2d 85 (Colo.1989); *People v. Gerdes*, 782 P.2d 2 (Colo.1989); *People v. Fitzke*, 716 P.2d 1065 (Colo.1986); *People v. Loseke*, 698 P.2d 809 (Colo.1985).

In addition, the record is replete with aggravating factors and is devoid of mitigating circumstances. ABA Standards for Imposing Lawyer Sanctions, Standards 9.22 and 9.32 (1986).

Standard 9.22 states:

**Factors which may be considered in aggravation.** Aggravating factors include:

    (a) prior disciplinary offenses;

    (b) dishonest or selfish motive;

    (c) a pattern of misconduct;

    (d) multiple offenses;

    (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

    (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

    (g) refusal to acknowledge wrongful nature of conduct;

    (h) vulnerability of victim;

    (i) substantial experience in the practice of law;

    (j) indifference to making restitution.

Standard 9.32 provides:

**Factors which may be considered in mitigation.** Mitigating factors include:

    (a) absence of a prior disciplinary record;

    (b) absence of a dishonest or selfish motive;

    (c) personal or emotional problems;

    (d) timely good faith effort to make restitution or to rectify consequences of misconduct;

    (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

    (f) inexperience in the practice of law;

    (g) character or reputation;

    (h) physical or mental disability or impairment;

    (i) delay in disciplinary proceedings;

    (j) interim rehabilitation;

    (k) imposition of other penalties or sanctions;

    (*l*) remorse;

    (m) remoteness of prior offenses.

The record establishes all of the aggravating factors in Standard 9.22 and none of the mitigating factors in Standard 9.32.

The respondent's total disregard of his obligations to his clients and his violation of the disciplinary rules requires disbarment. C.R.C.P. 241.6; DR 1–102(A)(1) and (6).

Accordingly, we order that the respondent, Bernard J. O'Leary, be disbarred and that his name be stricken from the list of lawyers authorized to practice before this court. The respondent is also ordered to refund to Joseph B. Vernetti $500, together with statutory interest from December 10, 1985, representing two payments of $250 that were made to secure performance of legal services that respondent never performed. The respondent is also ordered to make restitution to Donald F. Bensen in the amount of $5,066.76, together with statutory interest from September 30, 1986.[1] *See* § 5–12–106(2), 2 C.R.S. (1988 Supp.). It is further ordered that the respondent pay the cost of these combined proceedings in the amount of $1,429.54 within sixty days from the date of this opinion. All payments are to be sent to the Supreme Court Grievance Committee, 600–17th Street, Suite 550–S, Denver, Colorado 80202–5434. This order for disbarment shall become effective thirty days after the

---

[1] These disciplinary proceedings do not foreclose or prevent a further proceeding by Donald F. Bensen against respondent for an accounting, restitution, or damages. Respondent will, however, be entitled to a set-off of funds paid in compliance with this decision.

announcement of this opinion. C.R.C.P. 241.21.