The PEOPLE of the State of
Colorado, Complainant,

v.

Jimmie Joe HONAKER,
Attorney–Respondent.

No. 91SA35.

Supreme Court of Colorado,
En Banc.

June 3, 1991.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Jimmie Joe Honaker, pro se.

PER CURIAM.

In this disciplinary proceeding, a hearing board of the Supreme Court Grievance Committee recommended that the respondent, Jimmie Joe Honaker, be publicly censured and assessed the costs of these proceedings. The disciplinary counsel filed an objection to the hearing board's recommendation, arguing that the respondent's misconduct warranted suspension for no less than thirty days. Thereafter, a hearing panel of the Grievance Committee approved the findings of fact and recommendation of the hearing board. We subsequently issued an order to the respondent to show cause why more severe discipline should not be imposed, to which he responded. We now decline to accept the hearing panel's recommendation of public censure and order that the respondent be suspended from the practice of law for thirty days and that the costs of these disciplinary proceedings be imposed against him.

I.

Respondent was admitted to the bar of the Supreme Court of the State of Colorado on October 4, 1966, and is registered upon the official records of this court. He is therefore subject to the jurisdiction of this court and its Grievance Committee in these disciplinary proceedings.

This disciplinary action arises from the respondent's dealings with his client, David Hedgpeth (Hedgpeth). The following facts were established at a hearing on April 20, 1990, before the hearing board. On September 18, 1981, Hedgpeth paid Mr. Sutphin (Sutphin) $43,940 for an oil well swabbing unit that Sutphin had constructed for Hedgpeth. Immediately thereafter, Hedgpeth experienced serious problems with the equipment. He retained the respondent on November 24, 1981, after Sutphin failed to repair the equipment.

Following his unsuccessful efforts to resolve the dispute, the respondent filed Hedgpeth's lawsuit against Sutphin on February 1, 1982. After Sutphin's counsel deposed Hedgpeth on July 26, 1982, the respondent advised Hedgpeth to settle. The respondent, however, did not pursue settlement negotiations until February 2, 1983, at which time he proposed that Sutphin pay a total of $21,344.13 to Hedgpeth. Sutphin's attorney countered with an offer to pay $7,000, which Hedgpeth rejected.

Other settlement discussions between the attorneys occurred, but no other written settlement offers were exchanged.

Pretrial conferences were held on April 21, 1983, and December 8, 1983, during which the trial court ordered the respondent to prepare and file a supplemental pretrial order. Three trial dates, scheduled for December 5, 1983, March 12, 1984, and April 2, 1984, were vacated because the respondent failed to submit the requested pretrial order. The respondent claimed that his failure to meet the two court-ordered deadlines for submitting the pretrial order was intentional and was discussed with his client who understood the probable result of inaction. The respondent's correspondence and billing files reflected no such discussion, and Hedgpeth denied that any such discussion had occurred.

In his last written communication to Hedgpeth, dated March 29, 1984, the respondent advised his client that the trial was "being rescheduled." After March 1984, Hedgpeth attempted to contact the respondent by telephone and by visiting his office. The respondent did not return Hedgpeth's telephone calls, and, when confronted by Hedgpeth during the unscheduled visit to his office, the respondent assured Hedgpeth that he would "do something" about the Sutphin case. The respondent's bills to Hedgpeth reflect no activity on the case after December 1983. According to the respondent, he stopped billing Hedgpeth because of the weaknesses he perceived in the case.

On January 22, 1985, the court issued a notice stating that the case would be dismissed for lack of prosecution on February 22, 1985, unless the parties showed cause why dismissal should not occur. On February 21, 1985, the respondent filed a motion to retain the case on the docket, attributing his delay in filing the pretrial order to Sutphin's failure to produce certain items. On June 16, 1987, the court issued another dismissal notice to which the respondent did not respond. On July 20, 1987, the case was dismissed without prejudice for failure to prosecute. The hearing board found from disputed evidence that the respondent did not forward the court dismissal notices to Hedgpeth or inform him that the case was in danger of being dismissed for lack of prosecution.

In August 1988, Hedgpeth mentioned his unresolved suit against Sutphin to attorney Fred Boyer, who subsequently discovered that Hedgpeth's case had been dismissed for lack of prosecution. By that time, Hedgpeth's claim against Sutphin was barred by the statute of limitations.

The hearing board observed that, although the respondent initially pursued his client's matter with diligence, he failed to maintain communications with Hedgpeth once he perceived there to be difficulties with his case. Hedgpeth had paid $7,000 in attorney fees to the respondent, which, in the hearing board's estimation, was reasonable compensation for the work that the respondent had completed; however, the value of those services was lost when the respondent abandoned the case. The respondent testified that his only mistake was his failure to "paper his file" to cover himself and to avoid his client's "selective recall."

The hearing board concluded that the respondent's misconduct violated C.R.C.P. 241.6 and the following disciplinary rules of the Code of Professional Responsibility: DR 1–102(A)(1) (violation of a disciplinary rule); DR 6–101(A)(3) (neglect of a legal matter); DR 7–101(A)(2) (intentional failure to carry out a contract of employment); and DR 7–101(A)(3) (intentional prejudice or damage to client).

In recommending that public censure was a more appropriate sanction than suspension, the hearing board reasoned that the respondent's failure to communicate adequately with Hedgpeth "was more negligent than knowing," and further considered the absence of any prior discipline since the respondent was licensed to practice law in 1966. The hearing panel approved the hearing board's recommendation. On March 21, 1991, this court issued an order to the respondent to show cause why more severe discipline should not be imposed. In his response, dated April 11, 1991, the respondent stated that more se-

vere discipline was not warranted because (1) Hedgpeth's legal malpractice action against him for damages and attorney fees had concluded on August 21, 1990, (2) the respondent had instituted several unspecified office procedures and had prepared client evaluations to prevent similar problems from occurring in the future, and (3) the respondent was sorry for his actions.

## II.

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) provide that a reprimand, or public censure, is generally appropriate "when a lawyer is negligent and does not act with reasonable diligence in representing a client," thereby causing injury or potential injury to the client. Standard 4.43. Suspension is generally appropriate when a lawyer causes injury or potential injury to a client by knowingly failing to perform services for a client or by engaging in a pattern of neglect. Standard 4.42. Moreover, the commentary to Standard 4.42 instructs that

> [s]uspension should be imposed when a lawyer knows that he is not performing the services requested by the client, but does nothing to remedy the situation, or when a lawyer engages in a pattern of neglect, with the result that the lawyer causes injury or potential injury to a client. *Most cases involve lawyers who do not communicate with their clients.*

(Emphasis added.)

Although we give the recommendation of the Grievance Committee great weight, we reserve the right to exercise our independent judgment in arriving at the appropriate disciplinary sanction. *People v. Fitzke*, 716 P.2d 1065, 1068 (Colo. 1986).

We decline to follow the hearing panel's recommendation to issue a public censure against the respondent. In addition to the hearing board's finding that the respondent neglected to pursue settlement negotiations diligently, it found that the respondent intentionally failed to carry out his contract of employment with his client and intentionally prejudiced or damaged his client. Specifically, the respondent knowingly failed to prosecute Hedgpeth's claim or to obtain Hedgpeth's informed consent to abandon the claim. The respondent therefore knew that he was not performing the services requested by his client, but he did nothing to remedy the situation. The respondent's inaction injured his client by depriving Hedgpeth of his claim against Sutphin.

In light of the respondent's intentional misconduct resulting in injury to his client, we conclude that suspension is an appropriate sanction and order that the respondent be suspended from the practice of law for thirty days, effective thirty days after the publication of this opinion. *See* C.R.C.P. 241.21. We further order the respondent to pay the costs of these proceedings in the amount of $372.97 to the Supreme Court Grievance Committee, 600–17th Street, Suite 500–S, Denver, Colorado 80202, within thirty days of the announcement of this opinion.