**Ronald S. FITZKE, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 03PDJ050.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 17, 2003.

Opinion by a Hearing Board consisting of the Presiding Officer, MICKEY W. SMITH, and Hearing Board Members, JOHN M. LEBSACK, a member of the bar, and FRANCES L. WINSTON, a representative of the public.

**OPINION OF READMISSION**

*ATTORNEY READMITTED TO THE PRACTICE OF LAW*

A Readmission Hearing in the within matter was held on November 18 and 19, 2003 pursuant to C.R.C.P. 251.29(d) before a Hearing Board consisting of the Presiding

Officer, Mickey W. Smith, and Hearing Board Members, John M. Lebsack, a member of the bar, and Frances L. Winston, a representative of the public. John J. Astuno, Jr. appeared on behalf of Petitioner Ronald Scott Fitzke, ("Fitzke") who was also present. Fredrick J. Kraus appeared on behalf of respondent the People of the State of Colorado (the "People"). Fitzke offered exhibits A through Q, including the addendum to exhibit F, (curriculum vitae of Bennett S. Aisenberg), and including the addendum to exhibit G, (curriculum vitae of Leslie Jordan, Ph.D), which were admitted into evidence. The following witnesses testified on behalf of Fitzke: Leslie Jordan, Ph.D., Bennett S. Aisenberg, Curtis W. Shortridge, Robert R. Stewart, Barry Rothman, Tod E. Fitzke, Leigh H. Singleton, Tracy Lee Fitzke, James C. Kennedy, Jr. (by telephone), Taylor Owen, Timothy Mitchell, Dennis Storhaug, P. Donahue Shortridge, Eric Malinksi, Ann Stoyle, Claire Plouff, Dwight A. Larsen and Pastor Donald Marxhausen. Fitzke testified on his own behalf. The Hearing Board assessed the credibility of the witnesses, considered the exhibits offered into evidence, the Joint Stipulation of Facts submitted by the parties, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Fitzke was admitted to practice law in Colorado in 1981. He relocated to his home state of Nebraska and, in April 1982, obtained his license to practice law in Nebraska and went into practice with his father.

In early 1983, while practicing with his father, Fitzke was appointed guardian and conservator for Allie Marie Boontjer, who was elderly and incapacitated. While serving as conservator for Ms. Boontjer, Fitzke took approximately $19,000 from the estate and converted it to his own use to support a cocaine addiction. Thereafter, on October 23, 1983, Fitzke returned to Colorado to check himself in to a residential substance abuse program for cocaine addiction and alcohol abuse. At about that time, he disclosed to his father that he had taken the funds. With his father's help, Fitzke made complete restitution including interest to the estate. Upon discharge from the rehabilitation program, Fitzke entered the Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") programs. On June 1, 1984, Fitzke met with the Veteran's Administration which supervised the Boontjer conservatorship and tendered to them a written confession of his embezzlement. Immediately afterwards Fitzke informed the appropriate law enforcement authorities and the Nebraska Supreme Court of the embezzlement. He did so to act on his commitment to the NA and AA programs, requiring truthfulness and honesty.

Following these events in Nebraska, in 1984, Fitzke returned to Colorado and was employed by a law firm in Denver, Colorado. Fitzke admitted to converting in excess of $3,000.00 of client monies from the firm to his own use and to having forged a client's signature on a client refund check for $420.00 and appropriated that amount for himself. Fitzke used the funds to purchase cocaine. While he was employed at the firm, he was arrested for possession of a controlled substance, and his employment with the firm was terminated. Fitzke pled guilty to a class four felony of unlawful possession of a controlled substance, in *People v. Fitzke*, 84CR1892, in Denver District Court.

Fitzke began his commitment to remaining drug free and sober on July 24, 1984. He began attending at least one AA or NA meeting each day. On August 30, 1984, Fitzke was immediately suspended from the practice of law in Colorado during the pendency of disciplinary proceedings against him.

On August 27, 1984, the Nebraska Supreme Court temporarily suspended Fitzke from practicing law in Nebraska. Fitzke voluntarily surrendered his license and consented to the entry of disbarment against him in Nebraska. The Supreme Court of Nebraska vacated his admission to practice law in that state on January 23, 1985.

On September 26, 1984, Fitzke entered a plea of *nolo contendere* to the Nebraska theft charges. Approximately one year later, Fitzke was sentenced in that case. He was placed on probation for four years under certain conditions including restitution (which had already been made) and compli-

ance with all conditions of probation supervised through the Denver Office of Adult Parole.

On March 11, 1985 Fitzke was charged in 84CR1892 and sentenced to four years in the Colorado Department of Corrections, suspended under certain terms and conditions including payment of restitution to the law firm and therapy for drug and alcohol abuse.

The law firm brought criminal charges against Fitzke in a case captioned *People v. Fitzke*, 84CR1461, in Arapahoe County District Court. Fitzke was charged with theft, a class four felony. On March 21, 1985, the case was dismissed based on the disposition reached in the criminal action, 84CR1892, in Denver District Court.

On January 13, 1986, the Colorado Supreme Court disbarred Fitzke from the practice of law. *People v. Fitzke*, 716 P.2d 1065 (Colo.1986). He was ordered to pay costs of $162.35 within sixty days from the date of the Opinion.

At the time of his disbarment, Fitzke was twenty-eight years old.

Following his disbarment in Colorado and Nebraska, Fitzke filed the required affidavits affirming that he had complied with the rules in both jurisdictions required of disbarred attorneys. Fitzke successfully complied with and completed the terms and conditions of probation in the case involving theft of the Boonjter estate in Nebraska. Fitzke's probation was terminated by court order on October 28, 1988. He has successfully discharged and completed the terms and conditions of probation imposed in *People v. Fitzke*, 84CR1892, in Denver District Court. The People stipulated with regard to the pending cases against Fitzke—including the disciplinary action—that he has paid and fulfilled all restitution and monetary requirements.

Fitzke has undergone significant treatment for his drug and alcohol addictions. Initially, Fitzke completed a thirty-day inpatient treatment program at St. Luke's Hospital in Denver in October–November 1983. Thereafter, he resided in a halfway house, Sobriety House, for two months after leaving the inpatient program, from December 1983 through January 1984. He also completed an aftercare program at St. Luke's Hospital from December 1983 through April 1984. It was during this time period that he suffered a relapse. Following the relapse, from July 1984, Fitzke has maintained complete sobriety and has not used non-proscription drugs or alcohol from that date to the present.

Fitzke's history demonstrates a firm commitment to sobriety. Starting in July 1984, he regularly attended meetings, completing the "ninety meetings in ninety days" regime recommended by NA and AA. Fitzke has been a member of NA and AA for over nineteen years. He was a very active member for a period of about ten years, and lessened his active commitment following the birth of his children in order to commit himself to their activities. During the initial ten years, he worked with his sponsors through the 12–Step process and attended meetings on a daily basis. He led and participated in recovery centered workshops. He attended and spoke at conferences and conventions. He has sponsored and assisted other alcoholics and addicts, and continues his commitment to assisting others with similar problems, particularly young people and professionals. He regularly attended and spoke at institutional and treatment meetings devoted to helping youth avoid the consequences of drug and alcohol abuse. Fitzke served as Group Service Representative for both AA and NA. He served as a Central Committee member for NA. Fitzke was instrumental in fund raising for various AA and NA functions, and he served as a Committee Chair for the NA World Conference and the International Conference of Young People in AA. He helped found the NA area office and Drug hotline. He volunteered at the AA Central Office and answered the information line. His spouse has been very supportive of his recovery and his many activities in AA and NA.

In addition to his commitment to NA and AA, Fitzke followed through with all required counseling and treatment he was ordered to undergo. He received private counseling during the term of his probation through Colorado Counseling Services. He continued with this private counseling on his

own initiative for a lengthy time period even after his discharge from probation. He submitted to frequent regular and random urinalysis throughout the period of his supervision with no indications of drug or alcohol usage.

Fitzke's personal life has radically changed since his early days of alcohol and cocaine addiction. He met his wife in 1984 and they were married in 1988. They have two children. Fitzke is an active member of the community and engages in substantial volunteer work in his children's school, in his church, in scouting organizations, in his children's sports and extracurricular activities, and as President and past Director of a non-profit organization, the Colorado Blues Society. He is held in high regard in the community as a father who actively participates in his children's activities.

Fitzke has maintained employment since his disbarment. Initially, Fitzke assisted his sponsor in AA with a used car business. He then began working for a company selling photocopying and facsimile machines in August 1985. He worked for that company and its successor until 1998, starting at an entry level position and eventually handling large state and national accounts. He developed a reputation with long-standing clients as being reliable, honest and hard-working. He later became involved in a smaller photocopy company. In the course of this employment, he has been entrusted with substantial amounts of company and client funds, as well as with valuable company inventory, which trust he always fulfilled without incident or complaint.

Fitzke has demonstrated that he is able to remain drug and alcohol free under stressful conditions. Since July 1984 when he began his sobriety, he has dealt with the difficult consequences of disbarment in two states, he complied with the conditions of the criminal cases pending against him in Nebraska and Colorado, he has maintained employment with the same company or its successor for the major part of that period, he married and became a father of two children, and he dealt with the deaths of both parents—his father in 1997 and his mother in 1999.

In 2002, Fitzke determined that he would execute on his long-held dream of returning to the practice of law. Although proving himself successful in business, he missed the intellectual challenge of a law practice. His decision to seek employment as a law clerk/paralegal was fully supported by his family.

Since September 1, 2002, Fitzke has worked as a legal assistant at the firm of Stewart, Shortridge and Rothman, P.C. Under the supervision of the managing attorneys, he had conducted legal research, engaged in trial preparation, and has prepared pleadings, briefs, discovery, disclosures and other legal documents. He has communicated with clients and witnesses on behalf of his employer. He has appropriately followed the Rules of Professional Conduct applicable to a non-lawyer assistant. He is considered to be reliable, hard-working, scrupulously honest about his past, and diligent in his research and paralegal work. Fitzke's supervising attorney has known him for twenty-three years and will offer Fitzke employment with the firm as an attorney if he is readmitted.

In addition to his work as a paralegal, Fitzke has demonstrated competence in law by successfully passing the Colorado Bar Exam on February 25, 2003. He sat for and passed the Multi–State Professional Responsibility Examination on March 8, 2003. Fitzke has also remained current in the law by completing ninety-eight hours of Continuing Legal Education. He also completed many computer courses published by various law schools in the fundamental fields of law.

Fitzke has a much better understanding now of the flaws in his character as a young man in the early 80's causing his disbarment. He remains remorseful for his conduct and takes full responsibility for his actions. He maintains a network of supportive friends, family and colleagues. He continues to use the tools he acquired through AA and NA to remain sober. He is determined to make a positive contribution to the legal community.

In April 2002, Fitzke submitted to an examination with Leslie Jordan, Ph.D., who concluded that there is no risk at the present time that Fitzke will suffer a relapse in drug or alcohol addiction.

## II. CONCLUSIONS OF LAW

C.R.C.P. 251.29 governs the readmission of an attorney to the practice of law following a disbarment. Under C.R.C.P. 251.29(a), Fitzke must demonstrate that he is rehabilitated, that he is fit to practice law, that he is professionally competent, and that he has complied with all applicable disciplinary orders and relevant rules.

C.R.C.P. 251.29 provides in relevant part:

(a) Readmission After Disbarment.

To be eligible for readmission the attorney must demonstrate the attorney's fitness to practice law and professional competence, and must successfully complete the written examination for admission to the Bar. The attorney must file a petition for readmission ... [which] shall be heard in procedures identical to those outlined by these rules governing hearings of complaints, except it is the attorney who must demonstrate by clear and convincing evidence the attorney's rehabilitation and full compliance with all applicable disciplinary orders and with all provisions of this Chapter.

■ *People v. Klein*, 756 P.2d 1013, 1016 (Colo.1988) interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation. *Klein* requires:

[A]ny determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the respondent's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the respondent, the personal and community service aspects of the respondent's life, and the respondent's recognition of the seriousness of his previous misconduct.

Rehabilitation for purposes of attorney reinstatement and readmission to the bar has been defined as the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society. Avrom Robin, *Character and Fit-*

*ness Requirements for Bar Admission in New York*, 13 Touro L.Rev. 569, 583 (1997)(*quoting In re Cason*, 249 Ga. 806, 294 S.E.2d 520, 522–23 (1982)). Other factors which are considered are the applicant's age at the time of the offense and the likelihood that the applicant will repeat the behavior in the future. *Id.* Courts, including those in Colorado, focus upon the applicant's current mental state. *Id., See Klein*, 756 P.2d at 1016.

■ Imposition of discipline against an attorney includes a determination that some professional or personal shortcoming existed upon which the discipline is premised. The shortcoming may have resulted either from personal deficits or from a combination of personal deficits and professional and/or environmental inadequacies. It necessarily follows that the analysis of rehabilitation should be directed at the professional or moral shortcoming which resulted in the discipline imposed. *See* C.R.C.P. 251.29(c)(5); *Tardiff v. State Bar*, 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980) (*citing Roth v. State Bar*, 40 Cal.2d 307, 253 P.2d 969, 972 (1953))(holding that in an application for reinstatement ... the proof presented must be sufficient to overcome the court's former adverse judgment of [the] applicant's character).

■ It is rare that an attorney who engages in criminal conduct and is subsequently disbarred seeks readmission to the bar. It should be rarer still that readmission should be granted. *See In the Matter of the Petition For Reinstatement of David J. Trygstad*, 435 N.W.2d 723; 724 (S.D.1989)(stating that "[a] court should be slow to disbar, but it should be even slower to reinstate; it should endeavor to make certain that it does not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer."). "If a Court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." *Statewide Griev-*

ance Committee v. Alan Spirer, 247 Conn. 762, 725 A.2d 948 (1999), see, e.g., Hubbard v. Kentucky Bar Association, 66 S.W.3d 684 (Ky.2001)(attorney readmitted after having been convicted of three felonies, including conspiracy to impede and impair the Federal Election Commission, one count of theft of government property, and one count of obstruction of justice, the attorney having proven that his conduct since disbarment had been of a positive proactive nature and he was worthy of the trust and confidence of the public).

A prior disbarment based upon felonious conduct requires a close examination of the actual misconduct. See In the Matter of Wegner, 417 N.W.2d 97, 100 (Minn.1987)(holding that the present fitness to practice law of an attorney seeking [readmission] must be considered in light of the offenses for which he or she was disbarred, citing Matter of Peterson, 274 N.W.2d 922, 926 (Minn.1979)). In this case, Fitzke's disbarment arose from his commission of several felonies involving possession of a controlled substance, embezzlement of funds and theft of funds from his law firm. Each of these criminal episodes reveal character deficits present at the time the events transpired. Each episode arose from Fitzke's addiction to cocaine and alcohol. In order to be readmitted to the practice of law, Fitzke must establish that those character deficits present at the time of his misconduct have now been removed so as to insure that similar misconduct does not recur.

Fitzke has established that he has undergone a fundamental character change. From the date of his sobriety in July 1984, Fitzke has maintained a long-standing commitment to AA and NA, has acted as a sponsor and served in other leadership positions involving a great deal of time commitment. He has remained committed to his family and his community and actively participates in his children's activities. He gives a great deal of his time to volunteer activities in his church and children's schools. Fitzke has maintained employment from the date of his disbarment. He has an outstanding reputation for reliability, trustworthiness and good character in the business community in which he

functioned. He has responsibly handled large sums of money and company property without incident. He is committed to assisting others with addiction problems with their recovery, and is open and honest about his past. He is candid in admitting—as he did initially in Nebraska and Colorado—that he was at fault in engaging in drug and alcohol abuse. He takes full responsibility for his actions. The Hearing Board concludes by a clear and convincing standard that the character deficits giving rise to Fitzke's disbarment have now been removed so as to insure that similar misconduct does not recur.

The evidenced established and the People stipulate that Fitzke is in compliance with all past orders of court, including the disciplinary actions, Fitzke has compliance with all relevant rules governing disbarred attorneys, and Fitzke has demonstrated professional competence in the practice of law.

The evidence having established by a clear and convincing standard that Fitzke has been rehabilitated, is professionally competent, is fit to practice law, and has complied with all past orders of court, the Hearing Board herein Orders that Fitzke shall be readmitted to the practice of law.

### III. ORDER

It is therefore ORDERED:

1. That the Petition for Readmission of RONALD S. FITZKE is GRANTED and Fitzke is readmitted to the practice of law effective upon his complying with the requirements set forth in section (2) below;

2. Fitzke is ORDERED to tender $195.00 to the Office of Attorney Registration, fill out an attorney registration form and a COLTAF form, obtain a new attorney registration number, and appear before the Presiding Disciplinary Judge to take the oath of admission before December 31, 2003;

3. Fitzke is ORDERED to pay the costs of these proceedings;

4. The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Petitioner shall have

five (5) days thereafter to submit a response thereto.